[Sac. No. 459.  In Bank.—December 22, 1899.]

127  261
144  607

B. F. PORTER, Respondent, v. LASSEN COUNTY LAND AND CATTLE COMPANY et al., Appellants.

CORPORATIONS—VACANCY IN BOARD OF DIRECTORS—CORPORATE ACT BY MAJORITY OF FULL BOARD—VALIDITY OF MORTGAGE.—Notwithstanding a vacancy in the board of directors of a corporation organized under the laws of this state, it seems that a vote of a majority of the full board is valid as a corporate act to sanction the execution of a mortgage upon property conveyed to the corporation by the mortgagee.

ID.—RATIFICATION OF MORTGAGE BY FULL BOARD.—The subsequent action of a full board requiring the mortgagee to make additional advances on the security of his mortgage, and recognizing its validity in a resolution authorizing a second mortgage upon the property, is a full ratification of the first mortgage.

ID.—PLEADING OF MORTGAGE BY CORPORATION—PROOF OF RATIFICATION.— Where a mortgage executed by the corporation is pleaded, proof of a subsequent ratification is as pertinent to support the allegation as proof of a prior authorization.

ID.—INCOMPETENCY OF ONE DIRECTOR TO ACT.—The incompetency of one director to act, by reason of his interest in the transactions leading to the conveyance of the property to the corporation, and to the execution of the mortgage by the corporation, cannot affect the validity of the original authorization of the mortgage by a majority of the full board of directors to which his vote was not necessary, nor affect the subsequent ratification of the mortgage by a newly elected full board of directors, of which he was a member.

ID.—SECURITY FOR ADVANCES—DEMAND AND REFUSAL—FRAUD.—Where the mortgagee did not bind himself by the terms of the mortgage to make further advances which were provided for therein, excepting such advances within a specified limit as might be required to compromise any hostile claim to the mortgaged property, when requested so to do by the corporation, a mere demand by the corporation for further advances without reference to such a compromise, and a refusal to make the advances demanded, does not show any fraud committed by the mortgagee upon the corporation.

ID.—PLEADING—VARIANCE—EXCLUSION OF EVIDENCE.—Where the answer alleged merely a demand by the corporation for further advances, and a refusal by the mortgagee to make any further advances, an offer to prove a demand for an advance to carry out a compromise of a hostile claim is properly refused, and evidence thereof properly excluded, upon the ground that it had not been pleaded.

Id.—Refusal to Make Promised Advances—Recoupment—Pleading.—
The refusal of the mortgagee to make promised advances can-
not render the mortgage wholly void and incapable of enforce-
ment; but the mortgagor, in such case, can only .recoup the
actual damage shown to have resulted from the breach of that
stipulation in the contract, under a pleading justifying such
recoupment.

Id.—Application of Advances.—The mortgagee is not bound to see
that advances made by him to be expended in the care and
preservation of the mortgaged property are so expended by a
representative of the corporation to whom the advances are
properly paid.

Id.—Consideration of Mortgage—Advances Inuring to Benefit of
Corporations.—A mortgage executed to secure advances made by
the mortgagee for the care and preservation of the property of
the corporation, and of trust property which inured to its bene-
fit, and which was conveyed to it by the mortgagee, has a suffi-
cient consideration for its support.

Id.—Agreement with Owner of Stock Personally—Conveyance of
Trust Property—Corporate Property—Assumption of Liabilities
by Corporation.—The consideration of the mortgage is not affected
by the facts that the mortgagee became trustee of lands con-
veyed to him as security for advances thereupon under a per-
sonal contract made with the owner of nearly all of the stock
of the corporation, who was then acting in his own name, but
for the benefit of the corporation (the corporation being then dor-
mant), and that such owner assumed to convey to said trustee
as security the property which then belonged to the corpora-
tion, and that such property, together with the other property
held in trust, was conveyed by the trustee to the corporation,
after assumption by it of all the acts and liabilities of the owner
of such stock, without dispute as to their correctness.

APPEAL from a judgment of the Superior Court of Lassen
County and from an order denying a new trial.   F. A. Kelly,
Judge.

The facts are stated in the opinion of the court.

Spencer & Raker, and J. S. Spilman, for Appellants.

A. E. Bolton, for Respondent.

BEATTY, C. J.—This is an action to foreclose a mortgage
alleged to have been executed by the corporation defendant.
The findings and judgment of the superior court were in favor
of the plaintiff, and the defendants appeal from an order over-

ruling their motion for a new trial.   The main controversy in
the case is in regard to the execution of the note and mort-
gage, and in support of their appeal the defendants contend
that the decision of the superior court holding that the note
and mortgage were duly executed is not only contrary to the
evidence, but is against law, because it appears by the findings
of the court, as well as by the uncontradicted evidence, that
the resolution of the directors of the corporation purporting to
authorize the mortgage was passed at a time when there was
a vacancy in the board reducing the number of directors from
five to four.   The entire contention of the appellants upon this
point is based upon the proposition that a single vacancy in
the board of directors renders it impossible for the remaining
members to bind the corporation by their unanimous vote, how-
ever regular their proceedings may be in other respects.   They
further contend that even if it should be held that a board of
four directors was competent to act, the mortgage in question
was invalid because given to secure the personal obligation of
one of the four directors who voted for the resolution author-
izing its execution.   Some of their other principal contentions
are that there was a lack or failure of consideration for the
note which the mortgage was given to secure, and that the
plaintiff induced the execution of the mortgage by making a
promise which he never performed and never intended to per-
form, viz., that he would make further advances to the cor-
poration to the extent of thirty thousand dollars.

All these propositions are contested by respondent, and, with
respect to the execution of the mortgage, he contends that even
if its execution was not originally authorized by a competent
board it was nevertheless rendered valid by the subsequent rati-
fication of a full board, and that, independent of such ratifica-
tion, the corporation is estopped to deny its validity.

For the purpose of considering these and other grounds of
the appeal it will be convenient to state in a general way the
principal facts disclosed by the evidence.

The articles of incorporation of the Lassen County Land and
Cattle Company are not contained in the record, but from the
minutes of its proceedings it appears to have been organized
at some time prior to the year 1885, and to have adopted by-

laws declaring that the corporate powers of the company should be exercised by a president, vice-president, and board of five directors, including the president and vice-president, of whom a majority should constitute a quorum for the transaction of business. The capital stock of the company was divided into one hundred thousand shares, of which twenty-nine thousand six hundred and twenty-four shares remained unissued. Of the issued stock sixty-nine thousand seven hundred and ninety-five shares were held by C. A. Merrill, and five hundred and eighty-one shares stood in the names of other persons. It is very evident, not only from the distribution of the stock of the company, but from all the facts in the case, that Merrill and the corporation were substantially identical—the corporation, in other words, was a form under which Merrill transacted business. The property of the company (or of Merrill) consisted of lands, water rights, ditches, flumes, a sawmill, etc., of which Merrill appears to have had the control and management, either as president of the company or in his own right—it is not very clear or very important which. In January, 1885, when we get a first view of its affairs, the company seems to have been in lack of funds to carry on its ordinary business or care for its property, and after several meetings of its directors, at which these matters were fully discussed, it was finally resolved at a meeting held on the 5th of February, 1885, to close its office at 324 Pine street, San Francisco. Merrill, its president, was directed to sell the office furniture and to take charge of the proceeds, and he agreed to assume all responsibility for rent and other expenses in connection with the company's business. The minutes of this meeting were then written up, read, approved, and signed by the secretary and directors present. It is not stated that the board then adjourned sine die, but such seems to have been the case, for it does not appear that they ever met again until the twenty-eighth day of April, 1889, at which date Merrill presented a report of what he had been doing in the meantime. By this report he showed that he had expended in the management and improvement of the company's property about two thousand seven hundred dollars, borrowed in his own name from B. F. Porter, the plaintiff herein. To secure this indebtedness he had conveyed to Porter all the

property which he had formerly conveyed to the corporation. At the same time he entered into a written contract with Porter, a copy of which was attached to the report, by which Porter agreed to purchase other lands for Merrill's benefit, and upon repayment of all his advances, with interest, to convey to Merrill such additional lands, together with the property then conveyed to him by Merrill. All these things Merrill reported that he had done in his own name, but in the interest and for the benefit of the corporation. He reported, further, that Porter, in pursuance of the contract, had purchased four thousand four hundred acres of land and had advanced about thirty-five thousand dollars. The report of Merrill upon these matters was approved and his agreement with Porter (somewhat modified) was ratified and adopted by unanimous vote of the three directors present, but, as Merrill himself was one of the three, this attempt to ratify was clearly a failure. Afterward, however, on October 17, 1891, there was a meeting of the stockholders at which a full board of directors was elected, by whom a president and other officers were chosen; and, having thus effected a thorough reorganization, the Porter transaction was again taken up, and negotiations were resumed for the purpose of securing a conveyance from him to the corporation of the property conveyed to him by Merrill, and the additional property purchased by him under his contract with Merrill. Pending these negotiations, at a meeting of the directors of the company November 30, 1892, one of the directors resigned, but that fact was not communicated to Porter. Several other meetings of the directors were held without filling the vacancy in the board, and finally at a meeting held January 20, 1893, at which, according to the minutes, there were present four directors. including Merrill, the president, a preamble and resolution were unanimously adopted, wherein it was recited that the corporation was indebted to Benjamin F. Porter in the sum of sixty-five thousand eight hundred and twenty dollars and sixty cents, being the amount paid out and expended by said Porter in the development, improvement, and acquisition of title to the lands and property of this corporation in Lassen county; that the legal title to said property was vested in said Porter; that it was deemed advisable by the board to

have the legal title vested in the corporation, and payment of the sums due to Porter secured by note and mortgage, etc.; wherefore, it was resolved that Porter be requested to convey said lands, etc., to the corporation, and that the corporation execute its note for said amount and a mortgage of all said property to Porter. The preamble and resolution are set out at great length in the minutes; they give the precise terms of the note and mortgage which the president and secretary were authorized and directed to make and deliver in behalf of the company, including a full and particular description of the property to be conveyed to the company and mortgaged back to Porter. In this list of property was contained a large amount of land which the corporation had never before had any claim to, except such claim as arose out of the contract between Merrill and Porter above mentioned, and also the land, water rights, etc., which had been conveyed by Merrill to Porter at the date of that contract, and which, it seems, had been previously conveyed by Merrill to the corporation. Upon the adoption of this resolution a copy was handed to Porter, with the following certificate attached:

"I, R. J. Creighton, secretary of the Lassen County Land and Cattle Company, do hereby certify the foregoing to be a full, true, and correct copy of a resolution of the board of directors of said Lassen County Land and Cattle Company adopted at a special meeting of the board of directors, held at the office of the company, pursuant to due notice, a full board being present, on the twenty-eighth day of January, 1893, and that the mortgage hereunto annexed and note therein recited are full, true, and correct copies of the note and mortgage in said resolution referred to, and the said mortgage hereunto annexed is the original mortgage, the execution of which is therein and thereby authorized.

"[Corporate Seal]          ROBERT J. CREIGHTON,
"Secretary of the Lassen County Land and Cattle Company."

This certificate of the regularity of the proceedings of the directors was required by Porter before he would consummate the transaction, and, upon receiving it, and in reliance upon it, he executed the conveyance as requested, and the president and sec-

retary at the same time executed and delivered to him a note and mortgage, duly acknowledged, in the precise form prescribed by the resolution of the board of directors. Thereupon the corporation entered into the possession of all the property in question, and so continued down to the trial of this action. Not only did the corporation take over from plaintiff all the real estate included in his conveyance, to a large portion of which it had no previous claim, and upon all of which he had made large expenditures under his agreement with Merrill above mentioned, but, after the vacancy in the board had been filled, the directors, from time to time, demanded additional advances on the security of the mortgage, and such advances were made by the plaintiff, who also paid taxes assessed to and payable by the corporation on the mortgaged premises. Said full board of directors also authorized a second mortgage of the same property to a third party, and in their resolutions expressly recognized plaintiff's mortgage as a valid and subsisting lien, and they have always claimed and retained possession of the property conveyed by Porter, together with all the advantages of his large expenditures for its care and preservation.

With this preliminary statement of the principal facts of the case we may proceed to consider the questions discussed in the briefs:

1. Can a corporation perform corporate acts such as the mortgaging of its real property while there is a vacancy in its board of directors? Section 305 of the Civil Code provides that the corporate powers, business, and property of all corporations must be exercised, conducted, and controlled by a board of not less than five nor more than eleven directors, and that whenever a vacancy occurs in the office of director, unless the by-laws of the corporation otherwise provide, such vacancy must be filled by an appointee of the board. Section 308 provides that a majority of the directors is a sufficient number to form a board for the transaction of business, and every decision of a majority of the directors forming such board, made when duly assembled, is a valid corporate act. Section 290 provides that the articles by which the corporation is formed shall set forth, among other things, the number of its directors or trustees, which shall not be less than five nor more than eleven. The

by-laws of this corporation, and, I suppose, its articles of incorporation, provided for a board of five directors, and the question is whether, during a vacancy in one of these directorships, the four remaining directors could lawfully assemble for the transaction of any business except the filling of such vacancy.

Counsel have not cited any case decided in this state or any other of the United States in which this question has been directly decided. In England, under a statute which is somewhat different from ours, it has been held in several cases that a corporation cannot enforce a forfeiture of shares for nonpayment of a call by a board reduced by vacancies below the minimum number of directors prescribed by the deed of incorporation. (*Bottomley's Case*, L. R. 16 Ch. Div. 681, and cases therein cited.) These cases may, however, be distinguished from the case under consideration upon two grounds: In the first place the English statute differs from ours in an important particular. It does not require, as ours does (Civ. Code, sec. 290), the deed or articles of incorporation to specify exactly the number of directors who are to manage the corporate business, but permits the corporators to designate a maximum and minimum number who may act; the shareholders, that is to say, either by the deed of incorporation or by subsequent resolution, may declare that the corporate business shall be conducted by a board of not more, for instance, than seven, nor less than five. Such was the Bottomley case, and the board of directors had been reduced by resignations and bankruptcy to four members. It was held that the remaining four directors could not make a call upon the shareholders or enforce it by a forfeiture of the shares. Sir George Jessel, however, in order to reconcile his decision with previous decisions of the English courts, was obliged to make a distinction between the case in which there was a maximum and minimum number of directors prescribed by the deed of incorporation, and one in which there was a mere number of directors stated, with power in a lesser number to act, and in this connection he says: "When the mere number of directors is stated, and then there are provisions showing that the directors are to meet during vacancies to fill up the number, and that they may transact business with a less number

and so on, it is obviously meant that the larger number shall be the number of directors as the normal number, but not that the business shall not be carried on with a less number; but that has no application when you find a clause that the number shall never be less than a certain number."

This passage from the opinion (which is followed by more in the same line of argument, with various illustrations, pages 688, 689) is really and in effect a construction of our statute adverse to the contention of appellants, for section 305 of the Civil Code, in declaring that the corporate powers, etc., must be exercised by a board of not less than five nor more than eleven directors, adds nothing to the effect of section 290, which requires the articles of incorporation to state the number of directors of the corporation. All the provisions of the statute taken together mean this, and nothing more, that each corporation must have a fixed and definite number of directors, not less than five nor more than eleven in number, of whom a majority shall constitute a quorum for the transaction of business. The decision in *Bottomley's Case, supra,* therefore, so far from being an authority for the proposition that a California corporation cannot transact business pending a vacancy in the board of directors, is more nearly an authority against it.

Another distinction between that case with the whole line of decisions upon which it is based, and the case before us, is that they all relate exclusively to attempts to forfeit shares for nonpayment of calls. It is no doubt true that directors owe to their constituents the duty of keeping the board full by promptly filling vacancies as they occur, and this for the reason that the shareholders are entitled to the benefit of the experience and advice of all the members of a full board in the transaction of its business. When the directors violate this duty, there may be sound reasons for holding that they should not be allowed to take any advantage as against the shareholders of acts or resolutions passed when a full board was not in existence. But when the corporation is dealing with a stranger who, acting in good faith and in ignorance of the existence of a vacancy in the board of directors, parts with his property on the faith of what he is induced to believe is a valid corporate obligation, the case is certainly very different in its substantial merits, if not in point of strict law.

Appellant cites the case of *Moore v. Rector, etc.,* 4 Abb. N. C. 51, as a case directly in point, but it is not in point. There was an attempt to mortgage a church by the rector, one of the wardens, and four vestrymen. The act under which the church was incorporated required an annual election of eight vestrymen as an essential part of the board of trustees, and declared that no board should be competent to transact business without the presence of a majority of the vestrymen. It was contended that since there were three vacancies in the vestry, four were a majority, but the court, construing the act, held that it meant a majority of the full vestry. Our statute requiring a majority of the trustees to form a quorum should receive the same construction, but in this case four directors were present, more than a majority of a full board, and the resolution to mortgage was adopted by a unanimous vote of the four. Respondent, as bearing on this point, cites several cases in which the courts of New York and Pennsylvania have held valid the election of boards of directors or trustees of corporations less in number than the charters prescribed, and since these decisions necessarily involved the assumption that such boards, though curtailed in number, could carry on the corporation business, they are pretty direct authority to the effect that a board of directors is competent to act notwithstanding an existing vacancy. (See *Matter of Union Ins. Co.,* 22 Wend. 599; *Wright v. Commonwealth,* 109 Pa. St. 560.) In the latter case it is said: "The power of a board is never suspended by vacancies unless the number be reduced below a quorum."

It is not necessary to go to this extent in the present case. It would be sufficient, in order to sustain the validity of this mortgage, to say that the votes of a majority of a full board may authorize a corporate act, although there may be a vacancy in the board. I am of the opinion that this is a sound proposition, but it is not even necessary, though entirely proper, to decide the point here; for, conceding that there was a lack of power in the board of directors as constituted on the twenty-eighth day of January, 1893, to mortgage the company's property, there was no such lack of power at subsequent meetings of full boards at which the plaintiff was required to make additional advances on the security of his mortgage, and when a

second mortgage was directed by a resolution distinctly and expressly recognizing the existence and validity of plaintiff's mortgage. This was, in my opinion, a full ratification of the mortgage, and made it valid, if it was not valid at the date of its execution. Appellant cites section 2310 of the Civil Code against this conclusion, but it does not sustain him. The manner of directing the execution of a corporation mortgage is by resolution of the board of directors, and here by resolution of the board the mortgage is recognized as valid and its benefits claimed in behalf of the corporation. It is not necessary, in order to ratify, to do so in express and formal terms. Anything is sufficient which clearly and necessarily implies a recognition of the obligation.

It is objected that ratification was not pleaded. It was not necessary. A mortgage executed by the corporation was pleaded, and to support the allegation of a mortgage proof of a subsequent ratification was just as pertinent as proof of a prior authorization.

2. Another objection of appellant to the validity of the mortgage is based upon the fact that Merrill participated in the meeting of directors at which it was authorized and voted in favor of the resolution. It is contended that he could not transfer his personal obligation to the company. Considering that Merrill was, as we have seen, practically the whole corporation, this objection has not much substantial merit, but since there were a few shares of stock held by other persons it must be considered. And it is not disposed of like the last objection by what was done in subsequent meetings of the directors, when all vacancies in the board had been filled; for Merrill continued to be director and president and took part in those subsequent meetings. But in the first meeting three directors—a majority of a full board, exclusive of Merrill—voted for the mortgage, and in the subsequent meetings four members, exclusive of Merrill, voted for the resolutions recognizing its existence. The adoption of none of these resolutions depended on Merrill's vote. The votes of the other three directors were sufficient to bind the corporation, and his own vote, while expressing his assent to the arrangement, and binding him so far, had no effect in invalidating a resolution good without it.

3. Appellant contends that the mortgage was rendered invalid by the alleged fraud of plaintiff in procuring its execution by a promise to advance thirty thousand dollars in addition to the sums previously advanced, a promise which he has never performed and never intended to perform. The superior court finds that no such promise was made, but this finding is assailed as contrary to the evidence. The evidence cited against it consists altogether of two clauses contained in the mortgage, as follows: "And also to secure the repayment to said party of the second part of such further advances as may be made by him to or for the use and benefit of the party of the first part, and authorized or requested by it by resolution of its board of directors, not exceeding the further sum of thirty thousand dollars, exclusive of interest, over and above the amount of said above recited promissory note, and all such further advances shall be deemed to be due and payable to the party of the second part at the maturity of said promissory note, and shall bear interest at the same rate. . . . .

"If at any time during the existence of this mortgage there shall be made or asserted any claim against the lands and premises herein described, or any part thereof, or if any suit or action therefor or affecting the same or any part thereof shall be commenced or threatened, the party of the second part hereby agrees that he will, and he shall have the power, and is hereby authorized to settle and compromise the same upon such terms as may be authorized by the party of the first part, and that the moneys paid in such settlement or compromise, and for all expenses and counsel fees, shall be repaid to the mortgagees and his assigns by the party of the first part, and shall be a lien upon said lands," etc.

It is perfectly clear that the plaintiff did not promise or bind himself in either of these clauses of the mortgage to make a further advance of thirty thousand dollars upon the mere demand of the corporation. The utmost that can be claimed is that he agreed to advance such sum, within the limit of thirty thousand dollars, as might be required to compromise any hostile claim to the mortgaged property, when duly requested so to do by the corporation. Conceding that he made such agreement, the corporation would have no ground for complaint un-

less it appeared that he had refused to advance money to carry out a compromise of a conflicting claim which had been regularly approved by its board of directors. But this is not alleged. All that is said with reference to this matter in the answer filed by the corporation is that the directors had, before the commencement of the action, demanded a further advance of thirty thousand dollars, and that plaintiff had refused to advance the same or any part thereof. It is true that at the trial the defendants made an offer to prove that the corporation had demanded an advance of nine thousand dollars to carry out a compromise approved by them of a hostile claim asserted by one Marker, but this evidence was properly excluded upon the objection of the plaintiff that such matter had not been pleaded. It does not appear, therefore, that the plaintiff violated any agreement contained in the mortgage. But even if it had been alleged and proved that he did refuse to advance money required to carry out a compromise duly approved by the directors of the corporation, the result would not have been to render the mortgage wholly invalid and incapable of enforcement. In the absence of any rescission or attempt to rescind, the defendant would only have been entitled to recoup for the damages caused by the breach of this stipulation of the contract, and it is nowhere alleged or shown that the corporation sustained any damage by the failure to compromise the Marker claim.

There was evidence admitted in the course of the trial showing that plaintiff, prior to the execution of the mortgage, had promised to advance to Merrill three thousand dollars to be expended in the care and preservation of the mortgaged property, and the court finds upon sufficient evidence that fully that sum was so advanced to Merrill, or upon his order. An attempt was made to show that a considerable portion of it was used for purposes foreign to the business of the corporation. But the plaintiff's promise was only that he would advance the money to Merrill, and it was Merrill's business to see that it was properly applied. As to this matter I cannot see that the corporation has any ground of complaint, either technical or substantial.

4. The claim that there was a lack or failure of consideration for the mortgage rests upon the fact that Merrill had conveyed

to the corporation a portion of the property subsequently conveyed by him to plaintiff, and by plaintiff conveyed to the corporation at the date of the mortgage. Appellant argues that since the conveyance by plaintiff was the consideration of the note, and since a large portion of the property which plaintiff assumed to convey was already the property of the corporation, there was, to the extent of the value of such property, no consideration. Here, again, the whole substance of appellant's complaint rests upon the ability of Merrill, the individual, to distinguish himself from Merrill, the corporation. But the objection is easily answered in its technical aspect. The consideration of the mortgage was not the land which plaintiff conveyed or assumed to convey, but the money he had advanced for the care and preservation of property belonging to the corporation and the acquisition of other property, which he had purchased for Merrill under a contract of which the corporation desired to have the benefits. In all these matters Merrill had been acting in his own name, but for the benefit of the corporation during the long period when it lay dormant, from 1885 to 1889. When it came to life again and began to act in its corporate capacity it simply assumed Merrill's obligations incurred in the preservation of its property and the protection of its interests, at the same time appropriating to itself the benefits of what he had bargained for in his own name. As to the amount of plaintiff's advances and the extent of Merrill's obligations thus assumed by the corporation, there is no question—his accounts were submitted to Merrill and the other directors and their correctness was never disputed.

5. Appellants present a number of minor points in their brief relating to rulings of the superior court upon objections to evidence, but they all depend upon the propositions above discussed, and fall with them. At least it may be said that none of the rulings complained of could have been substantially injurious to the defendants, even if some of them may have been technically erroneous.

The order appealed from is affirmed.

Harrison, J., Garoutte, J., Van Dyke, J., Temple, J., McFarland, J., and Henshaw, J., concurred.