[Civ. No. 1509.     Third Appellate District.—August 28, 1916.]

HENRY DOERR et al., Appellants, v. FANDANGO LUMBER COMPANY (a Corporation) et al., Respondents.

CORPORATIONS—MORTGAGE BY PRESIDENT — SUBSEQUENT RATIFICATION.—A corporation is estopped from asserting that its president was not authorized by its board of directors to execute a mortgage on the property of the corporation to secure a loan of money to the corporation, where it subsequently made a deed of trust of all its property to a trustee for the purpose of straightening out its affairs, and in such deed made express reference to such mortgage and therein declared that the deed was subject thereto.

ID.—CONVEYANCE OF CORPORATE PROPERTY TO TRUSTEE—RECOGNITION OF MORTGAGE—SCOPE OF RESOLUTION.—The estoppel of the corporation to deny the validity of the mortgage under such circumstances is not affected by the fact that the resolution authorizing the execution of the deed of trust did not expressly vest the board of directors with authority to include in the deed of trust the provision that it should be subject to the mortgage, where the resolution did recite that the object of the deed was to place the properties and business of the corporation in the hands of a trustee for the purpose of operating the business and paying off the indebtedness of the corporation.

ID.—RECEIPT AND USE OF MONEY BY CORPORATION—ESTOPPEL.—A corporation which receives and uses money for the purposes of its business, to secure the repayment of which a mortgage on the property of the corporation is given, is estopped from denying the validity of the obligation.

APPEAL from a judgment of the Superior Court of Modoc County. Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

Cornish & Robnett, Daly B. Robnett, and N. J. Barry, for Appellants.

Jamison & Wylie, and W. Lair Thompson, for Respondents.

HART, J.—The plaintiffs instituted this suit to foreclose a mortgage upon certain real property of the Fandango Lumber Company, given to secure a loan to the latter of the sum of ten thousand dollars, evidenced by a promissory note executed by the Fandango Lumber Company in favor of the plaintiffs. The property upon which the mortgage was given is located in Modoc County and consists of about two thousand one hundred acres of timber and agricultural lands, upon which a sawmill stands.

The Fandango Lumber Company (to be hereafter referred to variously as the Fandango company and "the company") is a regularly organized corporation, doing business in California, with its principal place of business and offices at Fort Bidwell, Modoc County, this state.

The note to secure which the mortgage in question here was given is set out in full in the complaint. It was executed and delivered to the plaintiffs on the twenty-third day of December, 1911, and is payable on demand.

It is alleged that at the time of the delivery of said note, and for the purpose of securing the payment of the principal sum thereof, and the interest thereupon accruing, the Fandango company duly executed and delivered to the plaintiffs its mortgage, bearing date of December 23, 1911, "conveying the premises described in said mortgage"; that said mortgage was duly acknowledged and certified so as to entitle it to be recorded, and that the same was duly recorded in the office of the county recorder of the county of Modoc. It is alleged that the defendants, W. R. Wilkinson, W. R. Wilkinson, as trustee, and W. R. Wilkinson, as receiver, "have or claim some interest in, or lien on, said mortgaged premises; but all of said claims, if any, have accrued since the lien of said mortgage."

The mortgage is made a part of the complaint, and purports to have been executed by the Fandango company, "by A. G. Duhme, President."

The answer denies all the material averments of the complaint, but, while admitting that Wilkinson, as an individual, claims no interest in, or lien upon, the alleged mortgaged premises, alleges that he, as trustee and as receiver, has and claims some interest in and lien upon said premises.

The answer further alleges that the said A. G. Duhme, as president of the Fandango company, was never at any time authorized by the board of directors of said company, at any meeting thereof, or at all, to borrow any money from the plaintiffs, or to execute and deliver to the latter the said note for ten thousand dollars as evidence of a loan in that amount, or to execute the mortgage, the foreclosure of which is sought by this action; that the transaction involving the execution of said note and mortgage was never ratified by the board of directors of said company.

As an alleged "second and separate" defense, the answer charges collusion between the plaintiffs and the said A. G. Duhme for the purpose of fraudulently bringing about a foreclosure sale of the mortgaged property at which said property would be purchased by the plaintiffs, thereby preventing other creditors of the Fandango company from securing satisfaction of their respective claims against said company, amounting in the aggregate to approximately forty thousand dollars, and which claims are unsecured. No testimony having been offered or received in support of the charge so made, further consideration thereof is obviously unnecessary.

The court found that the Fandango company or its board of directors never at any time or place authorized the said Duhme, as president of said company, or otherwise, to borrow for the company from the plaintiffs the sum of ten thousand dollars or any other sum, or to execute on behalf of said company the note and the mortgage in question; that the said company or its directors never at any time subsequent to the making and delivery of said note and the execution of said mortgage ratified the same or the action of said Duhme in the transaction resulting in the consummation of the loan from the plaintiffs and the giving to them of said note and said mortgage; that, therefore, "the said note and mortgage are not, nor are either of them, the note or mortgage of the said Fandango Lumber Company."

From the findings, of which the foregoing is an epitomized statement, the court concluded as a matter of law "that the

said note and mortgage, and each of them, and every part thereof, are void and of no effect as creating any obligation against the said defendants or any of them, or as constituting any lien against the property of said defendants, or any of them, described in said mortgage and complaint, or otherwise.''

Judgment for the defendants followed, from which the plaintiffs appeal, supporting the same by a transcript of the testimony and other proceedings of the trial, prepared in accordance with the provisions of section 953a of the Code of Civil Procedure.

The general question presented is whether the findings vital to the judgment are supported by the evidence.

The salient facts are undisputed, and briefly they are: In the year 1911 the Fandango company found itself in financial difficulties, being heavily in debt and without financial means to carry on its lumber business. It owned extensive properties, including extensive timber land holdings. While the board of directors of said company never at any time expressly authorized Duhme, the president, to borrow on behalf of the company the sum of money for which the note and the mortgage in dispute were given, said board did, nevertheless, at a special meeting thereof, on August 18, 1911, adopt a resolution which, in general language, vested in the directors the authority to borrow money ''of whom they see fit'' for the company ''to run the business.'' (Trans., p. 47.)

Among those to whom the company was indebted at the time mentioned and whose indebtedness was secured was the Bank of Fort Bidwell. The company had overdrawn its account at said bank by the sum of approximately four thousand dollars, the total indebtedness of the company to said bank being over nine thousand dollars. The bank was pressing the company for a settlement, and Duhme, in the year 1911, went to Minneapolis, Minnesota, for the purpose of making an effort to secure a loan which would be sufficient to liquidate the debt of the company to the said bank. Two of the directors of the company—C. B. and C. D. Eustis—then resided in Minneapolis. After negotiations with the plaintiffs, Duhme and his codirectors, C. B. and C. D. Eustis, succeeded in securing the loan. Before consummating the transaction, however, Duhme telegraphed to the said bank from Minneapolis, asking its consent to mortgage the com-

pany's timber lands and plant to secure the proposed loan. The bank, by telegram, replied, under date of December 22, 1911: "Bank consents to your mortgaging timber and plant, providing you have bank in Minneapolis wire us seven thousand dollars for credit Fandango Lumber Company; overdraft now four thousand dollars. Brown advises two thousand in checks outstanding which we will protest if the money is not wired immediately." Thereafter, and on the twenty-third day of December, 1911, the plaintiffs loaned and delivered to Duhme the sum of ten thousand dollars, for which the note set out in the complaint and the mortgage attached to and made a part of that pleading as security for the payment of said note were executed by Duhme in the name and under the corporate seal of the Fandango Lumber Company.

On the twenty-fifth day of June, 1912, in pursuance of a resolution previously adopted by the board of directors of the Fandango company, the said board executed a trust deed, whereby it conveyed to the defendant, W. R. Wilkinson, as trustee, all the property covered by the mortgage in controversy. The object of said deed of trust was to straighten out the affairs of the company, and to this end the trustee was authorized by said instrument to conduct and manage the business of the company, to pay all current operating expenses, and to pay off, as they fell due, the debts of the concern. This deed provides, among other things: "The party of the first part (Fandango Company) covenants and agrees that this deed of trust delivered to the trustee shall be a mortgage upon the premises and property affected thereby, subject only to mortgage . . . to Devereaux, Wallace, Doerr and Bleeker, of Minneapolis," who are the plaintiffs in this action.

The Sunset Lake Lumber Company is a subsidiary corporation, which was organized subsequent to the time at which the mortgage in question was given, for the purpose of taking over the properties and business of the Fandango company and paying all its debts. On the twenty-sixth day of July, 1912, the Fandango company, by deed, conveyed to the said Sunset company all its properties and business for the purposes above mentioned. The defendant, W. R. Wilkinson, was then president of the Fandango company, and as such officer, and for and under the seal of the said company, executed the said deed of conveyance to the Sunset company. That deed expressly recites that it is subject to all the debts

of the Fandango company, and subject further: ". . . to a second mortgage for the sum of ten thousand ($10,000.00) dollars in favor of Thomas F. Wallace, et al., of Minneapolis, Minnesota. . . ."

On September 10, 1912, a complaint reciting, among other facts, the existence of the mortgage in suit and the indebtedness to secure which it was given, and asking for the appointment of a receiver of the Fandango company, was filed in the superior court of Modoc County, by an unsecured creditor of said company. The complaint in said action was verified, and alleged the existence and validity of the mortgage in suit here. Upon the hearing of the application for the appointment of a receiver in said action, the defendant, W. R. Wilkinson, was named for and appointed by the court to that office, and as such took over the control and management of the properties of the Fandango company covered by the mortgage involved herein.

On page 36 of the book containing the record of the proceedings of the meetings of the board of directors of the Fandango company there appears, on a slip of paper pasted on said page, a resolution in typewriting, purporting to have been adopted by the said board on the twenty-fourth day of June, 1912, and purporting to ratify the acts of Duhme in borrowing the money from the plaintiffs and in giving the note and the mortgage in question, evidencing and securing said loan.

It appears from the uncontradicted testimony of Duhme that the money obtained from the plaintiffs on the note and the mortgage in question was applied to the extinguishment of the obligations of the Fandango company, approximately nine thousand five hundred dollars thereof having been paid to the Bank of Fort Bidwell in satisfaction of the debt due it from the company.

Under the evidence, of which the foregoing statement embraces an accurate *résumé,* it cannot justly be held that the findings essential to the support of the judgment are warranted.

Whether the purported resolution of June 28, 1912, pretending to ratify the transaction involving the making and giving of the note and mortgage in controversy here was regularly or legally adopted by the board of directors, is a question. Duhme testified that it was so adopted, while Wil-

kinson, then a member of the board and president of the corporation, positively declared that he attended all the meetings of the board and that at none was any such resolution even suggested, much less adopted. But, in view of other facts, it is wholly unimportant whether there was or was not a formal ratification of the transaction. For we agree to the following contentions of counsel for the plaintiffs: 1. That the Fandango company ratified the mortgage ''when it made a deed of trust of all its property to W. R. Wilkinson, and in that deed expressly referred to plaintiffs' mortgage and made said deed subject to this mortgage, thereby expressly recognizing the obligation.'' 2. That the Fandango company again ratified said mortgage when its board of directors passed a resolution authorizing a deed of all its property to the Sunset Lake Lumber Company, said conveyance to be subject to the debts of the Fandango company, and which resolution not only expressly recognized the deed of trust theretofore given to Wilkinson, covering all its properties, but recognized by express reference thereto the mortgage of the plaintiffs as a prior and valid lien upon said properties. 3. That, as to the defendant, Fandango company, it is estopped from denying the validity of the mortgage, for the reason that it received, retained, and used, for its legitimate purposes, the consideration for the mortgage, viz., the sum of ten thousand dollars, with full knowledge of the fact that said sum of money had been borrowed for its use in its business and of the fact that said mortgage was given to secure the repayment of said sum of money.

But it is earnestly contended by the defendants that the trust deed to Wilkinson could not have the effect either of ratifying the act of giving the mortgage or of estopping the Fandango company from denying the validity of that instrument, inasmuch as the resolution authorizing the making of said trust deed did not expressly vest the board of directors with authority to include in said deed a provision that it should be subject to the prior lien of the mortgage. The resolution, it is true, did not in express terms refer to the indebtedness to the plaintiffs or the mortgage in question, but it did provide that the object of the trust deed was to place the properties and business of the company in the hands of Wilkinson, as trustee, for the purpose of operating the business of the concern and paying off its indebtedness. The

provision in the trust deed that it was to be subject to the
mortgage and the rights of the mortgagees thereunder may be
assumed to have been the result of the interpretation by the
directors of the language of the resolution providing generally
for the satisfaction of the obligations then existing against
the company; but whether such interpretation was justified
or not—that is to say, whether, in strictness, the board of
directors was authorized or intended by the resolution to be
authorized to insert in the trust deed as a condition thereof
the provision respecting the mortgage—the very fact that said
board did so construe the language of the said resolution in
that particular amounted to a recognition of the mortgage
as imposing a valid obligation upon the Fandango company
as effectually as if express authority to do so had been by
the resolution vested in said board. If, however, this posi-
tion were unsupportable, then upon either one of two other
considerations, supported by the record, may it justly and
with legal propriety be held that the transaction involving
the execution of the note sued on and the mortgage given to
secure its payment has been ratified, viz.: 1. That the trust
deed has been in existence for a long period of time (executed
June 25, 1912), is still in existence, and has never been re-
pudiated by the corporation, nor is there any repudiation of
it now. It must, therefore, be deemed to have been by the
corporation acquiesced in and all its covenants and conditions,
including any unauthorized conditions or terms, if any, which
it contains, thus ratified. (*Gribble* v. *Columbus Brewing Co.*,
100 Cal. 67, 69, 70, [34 Pac. 527].) 2. Not only does the
resolution authorizing the deed to the Sunset Lake Lum-
ber Company refer to and thus ratify the trust deed and
all its conditions, but the deed itself expressly refers to
and provides that it shall be subject to the mortgage in
question. Here, therefore, we have an express and positive
recognition of the obligation of the mortgage, and this is
the equivalent of the ratification of said mortgage. The con-
clusion thus declared is in accord with all the cases in which
the facts bear analogy to those of the present case. Indeed,
the proposition that ratification of a contract, the making
of which is unauthorized by one of the principals, may be
effectuated by a recognition, howsoever informally, of the
agreement and the obligations arising by virtue thereof, is
elementary. A familiar and common application of this doc-

trine is to be found in those cases where an agent, in making a contract for his principal, transcends the scope of his authority as such, and the principal, after the contract has been made, although not at that time legally bound by its terms, does some act recognizing the validity of the agreement— as, for instance, accepting some of the benefits or assuming some of the burdens thereof. In such case, quite obviously, the principal will be deemed from his acquiescence in the contract to have ratified the unauthorized act of his agent, and will be held to its terms and conditions, notwithstanding that he has not in express language or in a formal manner ratified the contract. The case here comes within the principle thus referred to. The giving of the mortgage was not an *ultra vires* act, and there is no claim that it was. If the act involved the making of an invalid contract, it was, as shown, merely because of the manner in which it was attempted to perform the act or make the contract, and, like any other contract, it is capable of being ratified by conduct or a recognition in some manner of the obligation; and, as stated, the deed to the Sunset company, which was executed and delivered by the Fandango company when the defendant Wilkinson was president thereof and which, indeed, was executed by him as president for the company, contains language clearly and plainly recognizing the mortgage and the obligations thereof.

We need not refer to all of the many cases holding to the views above expressed. The case of *Porter* v. *Lassen County etc. Co.*, 127 Cal. 261, 270, 271, [59 Pac. 563], is directly in point here, and it is sufficient for the purposes of this case to reproduce herein an excerpt or two therefrom. It is held in that case, quoting from the syllabi thereof: "The subsequent action of a full board [of directors] requiring the mortgagee to make additional advances on the security of his mortgage, and recognizing its validity in a resolution authorizing a second mortgage upon the property, is a full ratification of the first mortgage." In the text, the late learned Chief Justice Beatty, who wrote the opinion, said: "The manner of directing the execution of a corporation mortgage is by resolution of the board of directors, and here by resolution of the board the mortgage is recognized as valid and its benefits claimed in behalf of the corporation. It is not necessary, in order to ratify, to do so in express and formal

terms.   Anything is sufficient which clearly and necessarily implies a recognition of the obligation."

Besides the foregoing considerations, it is very clear that the defendant Fandango company having received, retained, and used for the purposes of its business the money, to secure the repayment of which the mortgage was given, is, and upon a familiar equitable principle should be, estopped from denying the validity of the obligation.   As shown, it is not disputed that the corporation received the money and used it in the payment of a part of its debts.

As to the defendant Wilkinson, it is to be observed that both as a trustee under the deed of trust and as a receiver under the appointment of the court he accepted the deed of trust and the office of receiver with full knowledge of the existence of the mortgage, and upon the express condition that his rights and powers in both instances were expressly made subject to the mortgage.   Indeed, as seen, as president of the Fandango company, he executed for said company, by authority of the directors duly evidenced and vested, the deed to the Sunset company, and by that act he recognized and admitted not only for the Fandango company but for himself as trustee the validity of the mortgage.

For the reasons herein stated, the judgment is reversed.

Chipman, P. J., and Ellison, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 27, 1916.