## In re FIRST NAT. BANK OF ARTHUR, ILL., et al.

District Court, E. D. Illinois.
May 14, 1938.

Thompson, White & Ingram, of Sullivan, Ill., for petitioner.

Hutton & Clark, of Danville, Ill., for respondent.

LINDLEY, District Judge.

This is a companion case to that decided this day with regard to the proper method of distribution by the shareholders' agent, growing out of the same receivership. The facts are stipulated.

All the shareholders of the First National Bank of Arthur, other than Mrs. Cora D. Luke, joined in a petition to this court requesting that the shareholders' agent be directed in making further distributions to credit the dividends payable to Mrs. Luke upon the note of Calida Investment Company held by the shareholders' agent and, in the alternative, to certain other relief. The shareholders' agent and Mrs. Luke insist that the prayer should not be granted.

The Comptroller appointed a receiver for the bank shortly after it closed on March 4, 1933. After payment of all debts, the remaining assets were, as provided in the Acts of Congress, delivered to the shareholders' agent. He is engaged in reducing them to money and distributing the proceeds.

On April 22, 1932 Mrs. Luke held 333 shares, or two-thirds, of the entire capital stock of the bank. The five petitioners held the remaining 167 shares. The bank's assets were not then in satisfactory condition, and all of the shareholders agreed, first by parol, that certain doubtful assets would be removed from the bank and the discrepancy in assets caused by the removal met by prorata contribution by the stockholders. A written contract to this effect was then prepared. It was sent to Mrs. Luke. She assented to the terms of the contract as drafted, except that she reported that she had organized the Calida Investment Company and had assigned her stock to that company. She requested, therefore, that the contract be redrafted with the name of the Calida Investment Company substituted for hers. She also asked that her stock be transferred on the books of the bank to the Investment Company. Both of these requests met with compliance. The stock was transferred to the Calida Investment Company. The contract of all the stockholders, including Calida Investment Company in lieu of Mrs. Luke, was prepared and executed. All of the petitioners complied with the agreement and made their respective contributions to the capital assets. The Calida Investment Company complied by giving its note for the prorata share represented by the 333 shares assigned by Mrs. Luke to it, namely, $3,996. This note has never been paid. It is now in the possession of the shareholders' agent.

The Calida Investment Company is a holding corporation organized by Mrs. Luke with 100 shares of capital stock. She owns 98 of those shares, one share being held by a member of her family and the other by a woman whose employment does not appear in the record. Mrs. Luke said that she organized the corporation to hold her stock and to protect her children. It had no assets of any character other than these shares of stock. The only possible inferences to be drawn are that she controlled the corporation; that it was an instrumentality created by her and acted solely for her, as she alone directed.

When an assessment of 100 per cent. upon all the shares of stock was made by the Comptroller, the receiver was unable to collect that upon these 333 shares. He brought suit against Mrs. Luke upon the theory that she was the owner in fact and that the corporation was merely a nominal party existing solely for her benefit. This suit was compromised by written agreement under which it was agreed that Mrs. Luke should pay $23,000 in full satisfaction of the assessment and that in distribution of assets, dividends should be paid to her upon the basis of $23,000.

The other stockholders now insist that dividends upon her contribution should be credited upon the note of Calida Investment Company, or in the alternative, that other relief should be granted which would equalize the petitioners and Mrs. Luke with regard to the contribution made in 1932.

The immunity of personal liability of stockholders for corporate debts is well established. It is based upon the concept that the corporation is a separate legal en-

tity, distinct from its stockholders, and in all jurisdiction and with all corporations, this immunity will ordinarily attach in the absence of express constitutional or legislative provision to the contrary. Fletcher, Cyclopedia of Corporations, vol. 6, § 4137; Cook on Corporations, 7th Ed., vol. 1, § 212, 213; 14 C.J. § 1474.

Inasmuch as this immunity is thoroughly grounded in the law of corporations it must be recognized, and no justification for its denial exists except in cases in which the Legislature never contemplated that it should be granted. In other words, immunity was created for certain legitimate purposes and it should not, therefore, be permitted for purposes that are not legitimate. The only basis, however, for denying normal immunity is an abuse of the privilege to do business in corporate form. See Wormser, Disregard of the Corporate Fiction, pp. 10, 24. Mr. Wormser says that fictions are invented and instituted for the advancement and promotion of justice and will be applied for no other purpose, and that this fiction, like every other fiction, must be employed with common sense and so applied as to promote the ends of justice. See, also, Ballantine on Parent and Subsidiary Corporations, 14 California Law Review 12. The latter author comments that the question comes down to one of good faith and honesty in the use of corporate privileges and that if a corporation is owned and controlled by another and is manipulated for the owner's purposes and interests, to the prejudice of innocent third parties, it may be necessary to limit such abuse of the corporate shield. If the circumstances justify, then, corporate immunity may be destroyed and stockholders automatically become liable for the obligations incurred in the corporate name. Thus the United States Supreme Court says in United States v. Reading Co., 253 U.S. 26, 40 S. Ct. 425, 434, 64 L.Ed. 760: " * * * where such ownership of stock is resorted to, not for the purpose of participating in the affairs of the corporation in which it is held in a manner normal and usual with stockholders, but for the purpose of making it a mere agent, or instrumentality or department of another company, the courts will look through the forms to the realities of the relation between the companies as if the corporate agency did not exist and will deal with them as the justice of the case may require."

Such peering through the forms to realities is justified, I believe, where the dominating party owns, for all practical purposes, all of the capital stock, furnishes its finances, and creates it with apparently inadequate capital and the corporation engages in no business except with the owner or as it is directed by the owner and the directors or executives of the corporation do not act independently but are under the dominance of the sole owner and the acts of the corporation result in injury to third persons. In the Willem Van Driel Sr., 4 Cir., 252 F. 35, a parent corporation owning all of the stock of a subsidiary was held liable for its obligations. The plants of the subsidiary were constructed and operated as adjuncts of the business of the railroad companies. The court said: "The potential and ultimate control of all the property and business affairs of the elevator company was lodged in the railroad company, and this control was exercised as completely and as directly as the machinery of corporate organisms would permit. Such complete dominance and control by the railroad company made the elevator company its mere puppet." Similar are Costan v. Manila Electric Co., 2 Cir., 24 F.2d 383; Westinghouse Electric & Mfg. Co. v. Allis-Chalmers Co., 3 Cir., 176 F. 362; Bishop v. United States, 8 Cir., 16 F.2d 410; Lehigh Valley R. Co. v. Delachesa, 2 Cir., 145 F. 617; Lehigh Valley R. R. Co. v. Du Pont, 2 Cir., 128 F. 840; U. S. v. Delaware, L. & W. R. R., 238 U.S. 516, 35 S.Ct. 873, 59 L.Ed. 1438.

As the court said in New York Trust Co. v. Bermuda Atlantic S. S. Co., D.C., 211 F. 989, 998: "When, however, we come to the question of authority, we are not bound by the whole sleight-of-hand paraphernalia of resolutions, deeds, leases, mortgages, and the like, because authority may rest in pais, and one may have authority to act for a corporation without the formal action of its board of directors."

The rule is the same whether the owner of a corporation be another such artificial entity or a person. If injury results from the sole ownership, dominance, and direction of a corporation by one man as his agency and instrumentality, immunity is destroyed, for if the corporation is his mere instrumentality and that fact results in injury to others, he will be personally liable. Luckenbach S. S. Co. v. W. R. Grace & Co., 4 Cir., 267 F. 676, certiorari denied

254 U.S. 644, 41 S.Ct. 14, 65 L.Ed. 454. In Wenban Estate, Inc. v. Hewlett, 193 Cal. 675, 227 P. 723, the court, discussing such a situation, said (page 731): "Accordingly it has been held that upon a sufficient showing that a corporation is but the instrumentality through which an individual, who is the sole owner of all of the corporate capital stock, for convenience transacts his business, equity, looking to the substance rather than the form of the relation, and the law as well, will hold such corporation obligated for the acts of the sole owner of the corporation to the same extent and just as he would be bound in the absence of the existence of the corporation. (Llewellyn Iron Works v. Abbott Kinney Co., 172 Cal. 210, 155 P. 986; Commercial Security Co. v. Modesto Drug Co., 43 Cal.App. 162, 184 P. 964; Minifie v. Rowley, 187 Cal. 481, 202 P. 673. Thus proof that an individual owns all of the stock of a corporation and that the corporation is in truth and in fact but the corporate double of the owner of the stock will, in conjunction with a further showing that as a result of the double relationship fraud or injustice will inure to a third person, suffice to dissipate the separate identity of the corporation. Minifie v. Rowley, supra. In such a situation, where, as here, the rights of third persons are involved, the law will have no compunction in holding the contract of the owner of the corporation dealing with the corporate assets to be the contract of the corporation. Porter v. Lassen County Land & Cattle Co., 127 Cal. 261, 59 P. 563; Schuyler v. Pantages, 54 Cal.App. 83, 201 P. 137; Swartz v. Burr, 43 Cal.App. 442, 185 P. 411."

I believe that the cases when analyzed support uniformly a denial of immunity of the individual stockholder when he is sole incorporator, has caused its organization, owns all of its stock, finances and controls it, and thereby either commits an actual fraud or effectuates an injury to others which equity should prevent.

■ The facts in the present instance disclose clearly a situation within this rule. Mrs. Luke, when the bank was first involved, organized a holding corporation which she herself held, to which she assigned all of her stock. It was a mere puppet. It held no other assets. It was under her sole dominance. She notified the other stockholders that she would not participate in any donation to the bank except through a note of this corporation. That note has never been paid. She has made no contributions herself, except to pay 69 per cent. of the assessment. The other stockholders have paid their contributions. It is only just in such situation that there should be set off as against her dividends in the future the note of her puppet corporation; that all her dividends in the future should be applied upon the note of her agent, her tool. Thus only can a court of equity prevent an inequitable result.

■■ This relief is justified not only by the reasoning of the cases we have referred to, but also by the general doctrine governing set-off and counterclaim. A court of equity has inherent power as a part of its general jurisdiction to allow or compel a set-off independent of statute whenever equity or justice demands. 57 C.J. 361. While mutuality is ordinarily required, a court of equity looks through the nominal parties, to the real parties in interest; it will receive evidence to disclose who are the real parties in interest, and thereupon it will allow a set-off even though the nominal parties be different. 57 C.J. 450, and cases there cited.

■ The petitioners ask that the shareholders' agent be held liable for not having made a set-off in the past, but the record does not disclose that the shareholders' agent was aware that the Calida Company was a mere nominal entity and that the real party in interest was Mrs. Luke. I can conceive of no basis in equity upon which he should be held personally liable.

However, it will be his duty in making distributions hereafter to withhold all dividends payable to Mrs. Luke and to apply the same upon the note of Calida Company including principal and interest.

The foregoing includes and is adopted as my findings of fact and conclusions of law.

Proper decree may be submitted.