[S. F. Nos. 9005, 9155.  In Bank.—February 25, 1921.]

## L. DUNNE, Appellant, v. THE INDEPENDENT ORDER OF FORESTERS (a Corporation), Respondent.

[1] CORPORATIONS—INVESTMENT OF FUNDS IN REAL ESTATE MORT-GAGES—LIMITATION OF AMOUNT—DECISION OF INVESTMENT BOARD —WHEN CONCLUSIVE.—A corporation authorized by the laws under which it was organized to invest its funds in real estate mortgages to the extent of sixty per cent of the value of the mortgaged property cannot avoid a contract entered into for the purchase of a mortgage on the ground that the contract was *ultra vires* for the reason that the amount to be paid was in excess of sixty per cent of the value of the security, where the investment board of the corporation had determined in good faith that the amount of the mortgage did not exceed sixty per cent of the value of the mortgaged property, since, with respect to third persons, in the absence of fraud, the decision of the board on the question of value was conclusive as to the power to make the contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  George A. Sturtevant, Judge.  Reversed.

The facts are stated in the opinion of the court.

Gavin McNab, R. P. Henshall, Nat Schmulowitz and F. W. Henshaw for Appellant in S. F. No. 9005 and Respondent in S. F. No. 9155.

Corbet & Selby for Respondent in S. F. No. 9005 and Appellant in S. F. No. 9155.

SHAW, J.—In this case three appeals are presented. By reason of the fact that the transcripts were filed at different times they received two numbers. No. 9005 is an appeal by the plaintiff from the part of the judgment denying her the relief asked in her complaint. No. 9155 presents appeals by the defendant from the part of the judgment which denied it relief upon its cross-complaint and from an order denying its motion that the judgment entered be vacated, and for the entry of a judgment in its favor on the cross-complaint. It is stipulated that the record filed in appeal No. 9005 may be used on all the appeals.

The complaint alleges that on April 6, 1916, the plaintiff and defendant executed an agreement whereby plaintiff agreed to sell and defendant agreed to buy a certain note and mortgage executed by Newark Realty & Development Company to said plaintiff and dated February 15, 1916, covering 2,186 acres of land in Alameda County, and the defendant agreed that on February 15, 1917, it would pay for said note and mortgage the sum of two hundred and twenty-five thousand dollars and all interest accrued thereon from February 15, 1916, to February 15, 1917, the note and mortgage to be transferred to the defendant upon payment by it to the plaintiff of said sum of money and interest. The agreement is awkwardly expressed but we have stated its legal effect. It is alleged that on March 1, 1917, defendant paid twenty thousand dollars on the agreement, and that on October 3, 1917, plaintiff tendered the note and mortgage to the defendant, together with an assignment conveying to it all plaintiff's title thereto, and demanded payment of the balance of the principal and interest under said agreement, which the defendant then refused to pay. The prayer was for judgment for two hundred and five thousand dollars with interest.

The defendant answered, setting up several defenses. Its first defense was that it had not executed the agreement sued

on. The second defense alleged that the defendant had paid forty-two thousand five hundred dollars on the agreement set forth in the complaint and that it was induced to execute the same by reason of certain false and fraudulent representations made by plaintiff to defendant. The third defense was that the defendant is a Canadian corporation, and that under its articles, and the laws of Canada governing it, it was without authority to purchase the said mortgage described in said agreement, and that any agreement executed by it purporting to agree to purchase the same was void for that reason. It also filed a cross-complaint wherein it alleged the same facts as are set forth in the answer, and in reliance thereon asked for a recovery of the forty-two thousand five hundred dollars alleged to have been paid upon said agreement, and for the cancellation thereof.

The court found that all the allegations relating to fraud were untrue. With regard to the execution of the agreement of April 6, 1916, it found that Stevenson, who was the president and attorney in fact of the defendant, on the one part, and the plaintiff, on the other part, "went through the form of making, delivering, and executing, as and for the contract of the" defendant, the said agreement. As to the power of the defendant to make the agreement, it found that it never at any time was authorized or empowered by law to enter into such contract; that it was not authorized by law to invest any of its funds in the purchase of mortgages where the amount paid therefor exceeded sixty per cent of the value of the land covered by such mortgage; and that on April 6, 1916, the value of the land covered by the mortgage to be purchased under said agreement did not exceed $231,803.55. It also found that the defendant had, by mistake, paid forty-two thousand five hundred dollars upon the agreement; that the agreement was void; that the defendant was not guilty of laches and had done nothing whereby it was estopped to contend that the agreement was beyond its powers.

The judgment was that the plaintiff take nothing by her action; that the defendant take nothing by its cross-complaint, and that defendant recover of plaintiff its costs.

To authorize the defendant to invest two hundred and twenty-five thousand dollars on a real estate mortgage, the real estate should have been worth three hundred and seven-

ty-five thousand dollars. If the theory of the court below that it could inquire into and revise the decision of the corporate authorities of the defendant as to the value of that land is correct, its conclusion that the defendant was not empowered to purchase said mortgage at that price is sustained by the facts; otherwise not, as we shall presently see.

Upon the trial it appeared that the denial of the alleged execution of the agreement of April 6, 1916, was based entirely on the theory that the execution of such a contract was not within the corporate powers of the defendant. The formal execution of the agreement was fully proven and found. The defense of the nonexecution of the contract, therefore, need not be considered, except as it may be connected with the defense that it was *ultra vires*.

The defendant is a corporation organized in Canada, under the laws of Canada. Those laws confer upon it power (a) "of loaning and of investment prescribed by the Insurance Act of 1910"; (b) to "constitute an investment board . . . to have charge of the loaning and investment of the funds of the society, . . . and to exercise such powers and under such regulations, . . . applicable thereto, as the society, or the executive council thereof, may from time to time determine"; (c) under the "Insurance Act of 1910," to "invest its funds, or any portion thereof, in the purchase of . . . mortgages . . . on real estate in Canada, or elsewhere where the company is carrying on its business, provided that the amount paid for any such mortgage . . . shall in no case exceed sixty per cent of the value of the real estate covered thereby"; and (d), under said act, to "loan its funds or any portion thereof on the security" of such mortgages, "provided, however, that no such loan shall exceed sixty per cent of the value of the real estate or interest therein which forms the security for such loan."

The defendant corporation was, at all times here involved, doing business in California. Consequently, its power to invest its money on the security of mortgages on real estate extended to this state and included authority to buy mortgages on California real estate in order to invest its money on such security. The only limitation upon this power is found in the proviso "that the amount paid for any such

mortgage shall in no case exceed sixty per cent of the value of the real estate covered thereby.''

It appears from the uncontradicted evidence that Elliott G. Stevenson was the president, chief executive officer, and general manager of the defendant at the time the transactions involved in the action occurred; also that prior to the making of the agreement sued on the ''investment board'' of the defendant, by resolution duly adopted, had authorized Stevenson, as its ''president and general manager,'' ''to undertake to purchase for'' the defendant the mortgage described in the agreement sued on, ''for such sum and upon such terms as to payment as he may deem expedient,'' and to execute as such president, in the name and on behalf of the defendant, a contract by which the defendant should ''undertake to purchase said mortgage and to pay for the same the face value, plus accrued interest from the date of transfer, upon such terms as to time of payment as aforesaid as he shall deem expedient.''

The decision of the court below that the defendant did not have power to make the contract for the purchase of the mortgage is based entirely on the theory that defendant's power depended on the conclusion of the court as to the value of the land covered by the mortgage at the time the agreement was made, and that the belief and decision of the investment board of the defendant that the land then had the necessary value to empower the defendant to invest the proposed sum in the mortgage was immaterial.  There is no finding that Stevenson did not believe that the sum to be paid for the mortgage exceeded sixty per cent of the value of the land, nor any finding of any kind on the subject of the belief, opinion, or knowledge of Stevenson, or of the investment board, as to the value of the land.  No question with respect to the effect of fraud of any sort, or of any breach of trust, is involved in the case.

[1] We are of the opinion that the court below was in error.  The purposes of the defendant are those of a life insurance company or mutual benefit association.  It has a large fund which it invests both in Canada and other countries for the purpose of obtaining money to pay to the beneficiaries of its policies or certificates.  It is authorized to invest these funds in real estate mortgages to the extent of sixty per cent of the value of the real estate mortgaged.

Its "investment board" invests these funds and it is charged with the duty, before making an investment thereof upon a real estate mortgage, of ascertaining and determining that the sum invested does not exceed sixty per cent of the value of the property, and, consequently, of determining to its own satisfaction the value of that property. It is not required to obtain the sanction of any court or tribunal before making the investment. Therefore, when it has, in good faith, determined that the value is sufficient, it has the power to invest the money upon that security. In the absence of any allegation and proof to the contrary, the law presumes that legal duty has been performed. The board authorized Stevenson to enter into an agreement on its behalf to buy this mortgage at its face value. He did so, and the evidence shows that it received the agreement and paid part of the price stipulated therein. These facts raise the presumption that the board satisfied itself by due inquiry that the sum to be paid did not exceed sixty per cent of the value of the mortgaged land, and that the members of the board then believed that the land was worth at least three hundred and seventy-five thousand dollars. We think that with respect to third persons dealing with the corporation, in the absence of fraud, the decision of the board on the question of that value is conclusive as to the power to make the contract. We need not go so far as to say that it is conclusive in any action against the unfaithful officers of the defendant or against third persons chargeable with participation in a fraudulent valuation, or with notice that the officer or officers acting for the company did not believe that the value of the mortgaged property was sufficient to authorize the taking of the mortgage in accordance with the defendant's articles.

Any other rule would make it practically impossible for the corporation to carry on its business successfully in such matters. The validity of its contracts relating thereto would remain undecided until some attempt was made to enforce them in the courts and until the court had finally determined that the value was sufficient to give the corporation power to enter into the particular contract. In effect the investment of the funds would be committed to the courts instead of the board. It is apparent that with this condition it would not be able to obtain such contracts. The

value of property rests on opinion. There is no subject of inquiry in the courts upon which opinions are more widely variant or more positive. If such contracts could be set aside whenever a court should find that the investment board had, even to a slight extent, overestimated the value of the property, no one could safely deal with the defendant in such matters, however cautious the board might be in coming to a decision.

The language of Justice Field in *Natoma Co.* v. *Clarkin,* 14 Cal. 552, is pertinent here. Speaking of a corporation with power to buy and hold "such real and personal property as the purposes of the corporation shall require," and referring to a proposal to have the court determine whether certain property was so "required," he said: "Whether or not the premises in controversy are necessary for those purposes, it is not material to inquire; that is a matter between the government and the corporation, and is no concern of the defendants. It would lead to infinite inconveniences and embarrassments, if, in suits by corporations to recover the possession of their property, inquiries were permitted as to the necessity of such property for the purposes of their incorporation, and the title made to rest upon the existence of that necessity." In *Bates* v. *Coronado B. Co.,* 109 Cal. 163, [41 Pac. 856], where a corporation having similar power sought to avoid its contract as *ultra vires,* the court said: "Whether a contract is 'essential' to the transaction of its ordinary affairs, or for the purposes of the corporation, is to be determined by those to whom the management of its affairs is intrusted. If it is within the apparent scope of its organization, the fact that the contract has been entered into by it, or its representative, is a determination on the part of the corporation that it is essential, and the corporation will not be permitted to question its effect." And in *Savings Bank* v. *Barrett,* 126 Cal. 417, [58 Pac. 915], the court said: "Whether the purchase of the mortgage in question was 'such as the purposes of the corporation required' was to be determined by its board of directors (Civ. Code, sec. 305), and is not open to investigation at the instance of the defendant." The provisions considered in these cases were limitations upon the power of the corporation, and the principle enunciated is applicable to any limitation of a similar nature where the action

of the corporation is to be taken according to the discretion or judgment of the officers in charge of its affairs, as is the case here. Such limitations are for the benefit and protection of the corporation and its beneficiaries or creditors, or the state. The corporation, or its beneficiaries or creditors suing in its name or on its behalf in equity, on the ground that its officers had acted fraudulently or in bad faith or that it had been defrauded by third parties, might perhaps impeach the finding as to value. But where there is no fraud or bad faith charged, the contract in such cases cannot be shown to be *ultra vires* by proof that the property was not of sufficient value to justify the investment made.

It follows from what has been said that the judgment in favor of the defendant is not supported either by the pleadings or the findings and that it cannot stand. This renders it unnecessary to consider the appeals of the defendant further than to state that the allegations of the answer and cross-complaint, so far as they were found to be true, do not, upon the principles we have stated, constitute grounds for any relief to the defendant against the plaintiff. The entire judgment should be set at large for a new trial.

The judgment is reversed.

Olney, J., Lennon, J., Sloane, J., Wilbur, J., Angellotti, C. J., and Lawlor, J., concurred.