[Civ. No. 5480. First Appellate District, Division One.—July 27, 1927.]

HARRY F. DAVIS, Respondent, v. PACIFIC STUDIOS CORPORATION, Appellant.

Sidney Rhein and Kirkbride & Gordon for Appellant.

Preston & Duncan and George W. Murphy for Respondent.

CAMPBELL, J., *pro tem.*—This is an appeal from a judgment entered in favor of respondent and against appellant on account of a compromise agreement. The allegations of the complaint may be summarized as follows:

In May, 1920, A. W. Scott and Frank Burt were promoting the Golden Gate Cinema Studios Corporation and engaged plaintiff as fiscal agent for the sale of its stock, agreeing to pay him twelve and one-half per cent brokerage or commission "of the amount of all stock issued or subscribed for"; that plaintiff commenced preparations for the sale of the stock, etc., but that before the conditions of the corporation commissioner's permit had been complied with Scott and Burt "and said Golden Gate Cinema Studios Corporation decided to organize another corporation to take the place of said Golden Gate Cinema Studios Corporation," and organized Pacific Studios Corporation, defendant herein; that prior thereto the employment of plaintiff "ceased and

was terminated by mutual consent of the parties, without prejudice, however, to the claim of plaintiff for commissions." etc.; that there had been obtained subscriptions for $85,000 of the stock of Golden Gate Cinema Studios, a corporation; that plaintiff was therefore entitled to $10,625 brokerage; plaintiff then alleges that defendant was organized for the purpose of carrying on the business originally planned by Golden Gate Cinema Studios Corporation, "which business said Pacific Studios Corporation has taken over and is now conducting," and that this defendant "has also taken over and appropriated, without consideration, all of the assets of Golden Gate Cinema Studios Corporation of the value of more than ten thousand dollars; that by reason thereof Golden Gate Cinema Studios Corporation is insolvent, etc; that thereafter plaintiff performed certain services for Pacific Studios Corporation of the reasonable value of $2,500, and that on November 12, 1920, defendant Pacific Studios Corporation agreed to pay plaintiff and plaintiff agreed to accept the sum of $5,000 in full satisfaction of both said claims in installments, of which but $1,000 has been paid, and plaintiff therefore prays judgment for the balance of $4,000."

The answer admits the first contract (Golden Gate Cinema Studios Corporation with Davis), but denies, among other things, that Pacific Studios Corporation was organized to take the place of Golden Gate Cinema Studios Corporation, or to carry on its business, or that it took over any assets of Golden Gate Cinema Studios Corporation, denies that any valid subscriptions were obtained by Golden Gate Cinema Studios Corporation, and denies that it agreed to pay plaintiff anything; admits that there was paid to plaintiff on November 12, 1920, the sum of $500 and on February 7, 1921, the sum of $500, but that each of them was made by said Scott and Burt without warrant or authority from this defendant.

Thereafter permission was obtained by plaintiff to file a "Second Amended and Supplemental Complaint" in the main similar to the former amended and supplemental complaint, but adding a final installment of $500.

The court found in accordance with the allegations of the complaint and entered judgment for respondent in the sum

of $4,000. From this judgment appellant Pacific Studios Corporation has appealed.

Appellant urges (a) that the Scott-Burt and Davis agreement was beyond the power of the corporation to make; (b) that it was made without sanction or ratification of the board of directors of the corporation; (c) that this defendant is in no sense a continuance of Golden Gate Cinema Studios Corporation, and that defendant received no property whatever from Golden Gate Cinema Studios Corporation; (d) that the court erred in admitting in evidence the Scott-Burt and Davis agreement, and the order on Scott; (e) that the evidence is insufficient to support certain of the findings.

Under the assignment of error that the agreement was beyond the power of the corporation to make it is questionable whether the defense of *ultra vires* is properly before the court, as there is no allegation in defendant's answer of such defense. If the defendant seeks to avoid its contract upon the ground of *ultra vires,* the burden is upon it to allege and prove such defense (*Brown* v. *Board of Education,* 103 Cal. 534 [37 Pac. 503]; *Morgan* v. *Board of Education,* 136 Cal. 247 [68 Pac. 703]). But even if the defense of *ultra vires* were pleaded, there is no showing that the contract sued upon was beyond the power of the corporation. The articles of incorporation are not before the court, nor has appellant attempted to define its powers.

 Corporations, in the absence of express restrictions, have, in addition to the powers expressly granted them, the implied power to do all acts that may be necessary to enable them to exercise the powers expressly conferred upon them and accomplish the objects for which they were created "Whatever transactions are fairly incidental or auxiliary to the main business of the corporation and necessary or expedient in the protection, care and management of its property may be undertaken by the corporation and be within the scope of its corporated powers" (*Teele* v. *Rockport Granite Co.,* 224 Mass. 20 [112 N. E. 497]). Every corporation has the power to enter into any obligations or contracts essential to the transaction of its ordinary affairs (Civ. Code, sec. 354). "Whether a contract is essential to the transaction of its ordinary affairs or for the purpose of

the corporation is to be determined by the corporation or those to whom the management of its affairs is entrusted. If it is within the apparent scope of its organization, the fact that the contract has been entered into by it or by its representative is a determination on the part of the corporation that it is essential, and the corporation will not be permitted thereafter to question its effect." (*Bates* v. *Coronado Beach Co.,* 109 Cal. 160, 163 [41 Pac. 855, 856] ; see, also, *Woods Lumber Co.* v. *Moore,* 183 Cal. 497, 501 [11 A. L. R. 549, 191 Pac. 905] ; *Dunne* v. *Independent Order of Foresters,* 185 Cal. 211, 217 [18 A. L. R. 639, 196 Pac. 41].)

The defense of *ultra vires,* urged by appellant, is no longer looked upon by the courts with favor, particularly when relied upon as a shield to escape liability. It is the policy of the law and the endeavor of the courts to hold corporations as well as natural persons to their contracts. Such defense introduced against a contract which has been executed in whole or in part by the corporation is looked upon with disfavor. As to contracts of corporations that are *malum in se* or *malum prohibitum,* they will not be enforced; but as to contracts not thus objectionable, justice and public policy require that the doctrine of *ultra vires* should be limited in its scope and application (*McQuaide* v. *Enterprise Brewing Co.,* 14 Cal. App. 315 [111 Pac. 927]). Here there is nothing in the contract that is either *malum in se* or *malum prohibitum;* the corporation received the benefit of the work done by respondent and the consequences to him to render inequitable a claim of *ultra vires* by appellant.

"Where, as was clearly the case here, an officer of a corporation is held out by such corporation to be possessed of power to perform all acts involved in its ordinary and usual business, the law will not permit third parties to suffer from such acts of such officers by the plea of the corporation that the ostensible authority of such officer was not in fact conferred upon him" (*Stevens* v. *Selma Fruit Co.,* 18 Cal. App. 242, 250 [123 Pac. 212 , 216]), and in *Brown* v. *Crown Gold Milling Co.,* 150 Cal. 376, 387 [89 Pac. 86], the court says: "The majority of the board having known the facts, it was not necessary to conclude the company defendant in favor of plaintiff, that his employment should be ratified at a regular

meeting of the board. It was sufficient that the majority of the board individually were advised of the terms of the employment of Mr. Doe, and took no measure to disaffirm as directors that employment," and in *Irwin* v. *Colburn,* 56 Cal. App. 41 [204 Pac. 551], the court uses this language: "It nowhere appears that such action by these officers was prohibited. Authority to bind the corporation may be proved by evidence that such officers have been allowed to conduct its business and that third persons have acted upon the authority which the corporation has thus permitted them to assume."

Appellant urges that at best respondent's claim was against Scott, Burt, and the Golden Gate Cinema Studios Corporation; that while there are allegations in the complaint alleging that Pacific Studios Corporation absorbed the assets of the former corporation, the testimony fails to show that the first corporation ever possessed anything; therefore, that while Scott and Burt may have been willing to pin the Golden Gate Cinema Studios Corporation indebtedness on Pacific Studios Corporation, something more must be shown before the corporation itself can be held liable for an attempt to foist upon it a debt wholly unconnected with its affairs. The evidence, however, establishes the fact that the debt is not, as appellant contends, a debt wholly unconnected with its affairs. It is not a case of one corporation paying the debt of another. In the first place, some of the services for which judgment was rendered were performed for appellant itself. The court so found, and there is sufficient evidence to support such finding. Mr. Davis testified that the new corporation reaped the benefit of the work that had been done through his activities and efforts as well as that of others, including Mr. Gerson, Mr. Gallagher, Mr. Burt, and Mr. Scott; that at a meeting at the company's office in the Hewes building—the office of the old and new corporation—Mr. Burt, general manager, stated to him (Davis) that he was authorized to offer him $5,000 in full settlement of all his claim for brokerage ($10,625 due from the old company) and services rendered defendant corporation ($2,500), totaling $13,125; that the $5,000 was to be in settlement of all respondent's rights under the contract and for additional services rendered for and in behalf of the new company; that Mr. Burt repre-

sented to him that he had been authorized to offer him $5,000, no more, no less. Appellant then stated to Burt that inasmuch as his (Davis') claim was for a brokerage of twelve and one-half per cent on $85,000 and in view of the services he had rendered the new corporation, he felt that he was entitled to founders' shares in the new corporation and to a larger cash sum than $5,000; that Burt did not deny that he was entitled to founders' shares, but stated to him that on that matter he had no voice; that he (Davis) had numerous telephones, long distance and otherwise, from Mr. Scott and Mr. Burt requested him to take up with Mr. Stephens of Stephens & Company the carrying on of the financing, they urging him to recommend the project to Mr. Stephens as a good offering; that he recommended that they procure the services of John Jasper of Hollywood to build the studios; that that was subsequently done, and that Mr. Jasper called upon him for inside information and that he recommended him to Mr. Scott and Mr. Burt. That some service was performed for the new corporation was admitted in a letter of Mr. Burt, manager of the new corporation, written to respondent. The letter is dated November 12, 1920, and written on the letter-head of appellant corporation and addressed to respondent, and is as follows:

"Confirming verbal conversation of even date regarding your claim against the Pacific Studios Corporation for services rendered, it is understood between us that these services will amount in the aggregate to $5,000.00 and that you will accept as payment the sum of $500.00 monthly until same is liquidated, it being understood, however, that if at any time the Company desires to pay in excess of this sum it is at their option. I am inclosing herewith order for the first payment of $500.00 and will see that similar order is delivered into your hands every thirty days from this date.

"Kindly acknowledge receipt of this letter and verification of its acceptance.

"Very truly yours,
"PACIFIC STUDIOS CORPORATION,
"By FRANK BURT, General Manager."

The letter of even date from Frank Burt to A. W. Scott, president of Pacific Studios Corporation, is as follows:

"Will you kindly pay to Mr. Harry F. Davis on presentation of this order the sum of $500.00 in keeping with agreement entered into with Mr. Davis of even date?

"Very truly yours,
"PACIFIC STUDIOS CORPORATION,
"By FRANK BURT, General Manager."

Furthermore, this is not a case of one corporation paying the debt of another. The evidence amply sustains the finding of the court that the appellant Pacific Studios Corporation was formed for the purpose and with the intent to carry on the business originally planned and intended to be carried on by the Golden Gate Cinema Studios Corporation and was in fact a continuation of the old corporation.

Mr. Davis, who was himself a subscriber to the first corporation, testified that the new company was formed to take over the assets of the old company; that it took over all the assets of the old company, took over the same option for a site at San Mateo, and the indorsements and subscriptions that were on hand, and the contracts with production companies for making pictures, occupied the same offices in San Francisco and that its officers and directors were substantially identical with the old company. The Golden Gate Cinema Studios Corporation had planned to build at San Mateo on the same site. The directors of the new corporation are, with one exception, the same as the old corporation. They have the same president and the same general manager. They had been proceeding under a wrong plan, and it needed revamping. They needed more capital to carry out the undertaking as it was then being planned. This testimony is corroborated by the testimony of Mr. Scott, which shows that the new corporation took a lease on the San Mateo site upon which he had previously taken an option for the earlier company, and which same site so leased was referred to in the prospectus of the Golden Gate Cinema Studios Corporation and the permit granted to it by the corporation commissioner and in the later prospectus of the Pacific Studios Corporation. It also shows that the indorsement of the Golden Gate Cinema Studios Corporation, made and ratified by the board of supervisors of San Francisco, was appropriated and used by Pacific Studios Corporation for the purposes of promotion, and that they

likewise took advantage of the indorsement of the committee appointed by the mayor of San Francisco, which appeared as an "advisory board" on the prospectus of the Golden Gate Cinema Studios Corporation and the indorsement of the Civic League. Furthermore, in a letter written by Mr. Scott, president of the new company, to Mr. Merk, editor of "The Advance," for publicity purposes, August 12, 1920, only a few days after the incorporation of the new company, Mr. Scott wrote: "I know you will be interested to learn that our plans for the building of a motion picture studio enterprise in your city are rapidly approaching consummation. As you know we started out some months ago with a plan contemplating the investment of some $300,000 for this project. Discussion of the plan in San Francisco and consultation with experts in this line with financial interests brought us to the conviction that the situation justifies the building of the enterprise on a more comprehensive scale and the investment of a considerably greater sum of money, and *we have arranged our plans to that end and changed the name of the company to the Pacific Studios Corporation,* and our ultimate investment in your community will probably approximate $1,000,000. . . . Several contracts have already been arranged which assures us of the success of the enterprise."

Mr. Gallagher, who was a director in both corporations, considered the new corporation liable to him for his own claim for moneys advanced to the old corporation and that the new corporation is the result of the work they did with reference to the old corporation.

Mr. Gerson, who claimed to be the originator of the idea of the studios and who performed services in the formation of the first corporation and was one of its directors, claimed founders' shares in the new corporation for the work done for the old corporation.

Mr. Kirkbride, who assisted in securing the San Mateo and Burlingame subscriptions, testified that about two-thirds of the persons who pledged subscriptions to the first corporation subscribed to the second.

Continuance of the old corporation in the new is also evidenced by a stipulation showing the personnel of the new corporation to be substantially identical with that of the old. It is also evidenced by the fact that the new corporation

assumed and paid obligations of the old corporation, to wit: The printing bill, a claim for publicity work by Mr. Crowley, Mr. Scott's account for advancements made to the old corporation, and that founders' shares were given to Gerson, Gallagher and Scott for services rendered to the old corporation. To be sure, some of the witnesses for appellant deny the identity of the new corporation with the old, but such testimony only creates a conflict of evidence, and there being substantial evidence in the record to sustain the findings of the trial court, under the well-established rule they will not be disturbed on appeal.

■ The evidence also sustains the conclusion that the contract was sanctioned and ratified by Pacific Studios Corporation. Mr. Burt, who wrote the letter of November 12, 1920, was the general manager of appellant corporation, held out as such to the public by the corporation through its circulars and prospectus. The corporation had an executive committee with extensive powers appointed pursuant to its by-laws, which committee at the time respondent's claim was adjusted consisted of Mr. Burt, Mr. Scott, Mr. Gallois, and Mr. Pearson, and both Mr. Scott and Mr. Burt obviously authorized and approved the settlement with Mr. Davis, and there is no direct evidence that Mr. Gallois and Mr. Pearson disapproved it. In addition, Mr. Bell, a director and attorney for the corporation, approved the settlement. He stated to Mr. Lum, representing respondent, that he would recommend to appellant a settlement of $5,000 net cash. Mr. Stephens knew of respondent's claim and that negotiations for settlement were going on and offered to take up with Mr. Scott the matter of settlement. He advised respondent to accept $5,000 on the partial payment plan and himself approved it. Mr. Caswell, treasurer of the corporation, signed the checks by which two $500 payments on the contract were made by the corporation. Also, Mr. Burt testified that Mr. Caswell, Mr. Bell, and Mr. Scott were in favor of the settlement. Mr. Gallagher, also a director of the new corporation, favored the settlement and also testified that "there was a continuous discussion of the Davis claim running through the boards of the old and new corporation," showing knowledge of the corporation. Mr. Burt in a letter of October 1, 1920, to Mr. Davis stated that the settlement of this claim was placed in the hands of Mr. Bell

"by instruction of the board of directors." Mr. Davis testified that he had conversations with all the different members of the board, including Mr. Burt, Mr. Scott, Mr. Stephens, Mr. DeCamp, Mr. Gallagher, and others before November 12th, the date of the accord. Mr. Burt testified: "Q. Did you tell Mr. Stephens that you had settled this claim with Mr. Davis after you had written this letter of November 12th? A. I presume I told the board about my action, for I regularly made a written report of my activities. Q. Do you know whether you reported that to the board? A. I said I presumed I reported it." There is no evidence that the directors ever repudiated the agreement until the answer was filed in this action.

 Existence of authority may be shown by proof, of course of business, the knowledge of the board of directors of the corporation, and by presumptions of such knowledge (*Mahoney Min. Co.* v. *Anglo-California Bank*, 104 U. S. 192 [26 L. Ed. 707, see, also, Rose's U. S. Notes]). Authority of the corporation may be shown by evidence that the person does business for the corporation and on its behalf as agent with the knowledge and acquiescence of its directors or by their direction. The corporation in such case is bound by his acts and declarations within the scope of the business entrusted to him. It is not the law that the authority of the agent or officer to act for a corporation can be proven only by the minutes of its board of directors or by a contract in writing (*Venice* v. *Short Line Beach Land Co.*, 180 Cal. 447, 453 [181 Pac. 658]; *Aigeltinger* v. *Burke*, 176 Cal. 621 [169 Pac. 373]; *Sessions* v. *Pacific Imp. Co.*, 57 Cal. App. 25 [206 Pac. 653]; *Betts* v. *Southern California etc. Exch.*, 144 Cal. 402 [77 Pac. 993]; *Irwin* v. *Colburn*, 56 Cal. App. 41 [204 Pac. 551]; *Raftis* v. *McCloud River Lumber Co.*, 35 Cal. App. 397, 400 [170 Pac. 176]).

 But even if the acts of the directors do not constitute a ratification of the contract, they are estopped from so claiming, and such estoppel need not, as claimed by appellant, be pleaded. In *Blood* v. *La Serena L. & W. Co.*, 113 Cal. 221 [41 Pac. 1017, 45 Pac. 252], the court held that an estoppel *in pais* may be shown without pleading it by way of equitable rebuttal to defendant's proof of want of authority to execute a note and mortgage sued upon after plaintiff had established a *prima facie* case, and that it is

only when a plaintiff must rely on an estoppel *in pais* in order to maintain his action against defendant that it must be pleaded.

*Eels* v. *Gray Bros. etc. Co.*, 13 Cal. App. 33 [108 Pac. 735], holds that if a corporation clothes its officer or agent with apparent authority to act for it in a particular matter, it will be estopped to deny such authority as against persons dealing with such officer or agent in good faith and in ignorance of any limitations on his authority (see, also, *Fowler Gas Co.* v. *First Nat. Bank*, 180 Cal. 471 [181 Pac. 663]; *Union Oil Co.* v. *Purissima Oil Co.*, 181 Cal. 479, 482 [185 Pac. 381]; *Doerr* v. *Fandango etc. Co.*, 31 Cal. App. 318 [160 Pac. 406]).

"It is a general rule that notice to an officer or agent of a corporation is notice to the corporation if in matters in which such agent or officer would have authority to act for the corporation or whose duty it would be to communicate it to the board of directors or to an officer who had some power or authority in the matter. Such agents or officers are conspicuously the president of the corporation, the general manager, if it have one, the secretary and a bank cashier" (Clarke on California Corporations, 586). "But if full knowledge was necessary, it must be presumed that the corporation had full notice of all the facts which were known to the president. The president of a corporation is a proper person to whom notice, which is to affect a corporation, is to be given. The corporation has no eyes, ears or understanding save through its agents. The president is considered the head of the corporation, and it is his duty to report to the trustees information affecting the interests of the corporation. And the presumption is that he does so. Usually this is a conclusive presumption" (Thompson on Corporations, sec. 5228). This rule cited with approval in *Balfour* v. *Fresno Canal etc. Co.*, 23 Cal. 397 [55 Pac. 1062]; *Fresno St. Ry. Co.* v. *Southern Pacific Co.*, 135 Cal. 202 [67 Pac. 773]; *Montecito Valley etc. Co.* v. *Santa Barbara*, 144 Cal. 597 [77 Pac. 1113]; *Lowe* v. *Yolo County etc. Water Co.*, 157 Cal. 513 [108 Pac. 297]; *Goodwin* v. *Central Broadway Bldg. Co.*, 21 Cal. App. 376 [131 Pac. 896]; *Jan Wai* v. *Smith-Riddel Co.*, 55 Cal. App. 63 [202 Pac. 952.]

Appellant cites *Guernsey* v. *Johnson Organ & Piano Co.,* 29 Cal. App. 699 [157 Pac. 527]; but that case is not analogous. There the only evidence that the defendant corporation assumed the indebtedness of the Harris company was a letter written by the secretary, who stated that it was written as a means devised by himself to assist the Harris Company. There was no evidence that the defendant corporation received any benefit nor, as the court says, "is it shown by a scintilla of evidence that the secretary had any ostensible authority to act in the matter. . . . The cause of action was based solely upon the letter without any other showing whatsoever."

Nor is *Bonner Oil Co.* v. *Pennsylvania Oil Co.,* 150 Cal. 658 [89 Pac. 613], cited by appellant, in point. There the secretary of the corporation who signed the composition did so without the knowledge or consent of the other corporation officers, and there was no consideration moving to the corporation for the signature to the composition. In *Fontana* v. *Pacific Can Co.,* 129 Cal. 51 [61 Pac. 580], quoted by appellant, certain elements were lacking, and their absence was held fatal in that case, but these very elements are present in the instant case. There was no evidence that either the president or secretary who signed the contract had any powers from which it might be inferred that they or either of them could make such a contract. There was no claim or evidence of subsequent ratification "and no evidence that the directors ever knew of the contract, much less authorized it by their conduct or acts."

*International Magazine Co.* v. *National Radio Co.,* 67 Cal. App. 498 [227 Pac. 918], cited by appellant, is also distinguishable from this case. There the contract in question was signed by the president alone, though it appeared that the corporation had a general manager at the time. Also there was no evidence that the directors had knowledge of the action of the president and there was no evidence of his ostensible authority or that the plaintiff had relied upon such authority. The court recognized and asserted the rule that the authority of the president to contract "may arise from his having assumed and exercised that power in the past, or the corporation may ratify his contract or accept the benefits of it and thereby be bound."

*Pacific Bank* v. *Stone,* 121 Cal. 206 [53 Pac. 634], and *Hoffman* v. *Gottstein Inv. Co.,* 101 Wash. 428 [172 Pac. 573], are likewise distinguishable from the instant case. Here appellant had knowledge of the agreement with respondent and received the benefits. The negotiations were known to the president and the general manager, the agreement itself was known to most of the directors, and the records of the corporation showed two payments made to respondent on account thereof.

From what has been said it follows that there is no merit in appellant's assignments "that the Scott-Burt and Davis agreement was beyond the power of the corporation to make—that it was made without sanction or ratification of the corporation—that this defendant is in no sense a continuance of Golden Gate Studios, and that defendant received no property whatever from Golden Gate Studios."

As to the assignment "that the court erred in admitting in evidence the Scott-Burt and Davis agreement and the order on Scott" for the reason, as urged by appellant, that such evidence is incompetent, immaterial, and irrelevant and not binding on the corporation because not authorized and because it bears no seal, it is sufficient to say that it is not a deed as was the case in *Barney* v. *Pforr,* 117 Cal. 59 [48 Pac. 987], cited by appellant, and the only effect of the seal attached thereto would be to constitute *prima facie* evidence of its execution by the corporation in the absence of affirmative proof of authority (see *Litch* v. *Marx,* 21 Cal. App. 212 [131 Pac. 328]). The letters were both written on the stationery of the corporation and signed by the general manager, and while not conclusive evidence of the accord, they were obviously admissible as elements of the transaction between the parties. They were no less competent than the oral communications between respondent and the officers of the corporation to which the witnesses freely testified.

As to the assignment "that the evidence is insufficient to support certain of the findings," there is likewise no merit. The findings which it is claimed are unsupported are finding VI, that defendant has taken over and appropriated without consideration the assets of the Golden Gate Studios and that such assets are worth $10,000; finding

VII, that plaintiff believed there was due him $10,625, and that he performed certain services for defendant and plaintiff believed the reasonable value of such services to be $2,500; finding X, that the reasonable value of the service rendered by plaintiff to both corporations is $5,000; finding XI, to the effect that defendant duly and regularly agreed to pay plaintiff $5,000; findings XII and XIII, relating to the agreement to pay plaintiff $5,000, and finding XIV, finding many of the denials in the answer untrue. As to finding VI, the evidence shows that defendant assumed and agreed to pay the claim of plaintiff; therefore it is not important what was the value of the assets of the former corporation; however, there is evidence of such assets and their value, which, if necessary, is sufficient to sustain the finding. As to finding VII the court was justified in finding from the demands made by plaintiff upon Mr. Burt, the general manager, for such amounts that plaintiff believed that his services were reasonably worth what he demanded. Finding X, that plaintiff's services were reasonably worth $5,000, finds sufficient support in defendant's own agreement to pay him such sum therefor, even if there were no evidence of their value in the record. As to findings XI, XII, and XIII, relative to the agreement of defendant to pay plaintiff $5,000, such findings are supported, as is shown by the evidence herein set out, and there is likewise no error in finding XIV, wherein the denials of defendant are found to be untrue.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court September 22, 1927.