[Civ. No. 12264. First Dist., Div. Two. Dec. 31, 1942.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, ALLAN ANDERSON et al., Respondents.

Donald Gallagher for Petitioner.

Everett A. Corten for Respondents.

F. Britton McConnell as Amicus Curiae on behalf of Respondents.

STURTEVANT, J.—This is an application for a writ of review. The petitioner seeks to obtain an order annulling an award made in favor of A. T. Morris & Sons, Inc., the employer, and against the petitioner as the insurance carrier of said employer. No question of fact is involved. The sole question presented is whether the policy issued by the petitioner is a valid contract.

A. T. Morris & Sons, Inc., is a member of Associated Home Builders of San Francisco, an industrial association and corporation which was organized and is operated for sundry purposes, one of which is to purchase "group" workmen's compensation insurance. The petitioner issued several certificates of workmen's compensation insurance to employer members of said Associated Home Builders of San Fran-

cisco, including one to the respondent A. T. Morris & Sons, Inc., purporting to insure each of them in full against liability under the workmen's compensation provisions of the Labor Code of the State of California. The certificate of workmen's compensation insurance to respondent A. T. Morris & Sons, Inc., was for the period January 1, 1942, to January 1, 1943. On February 6, 1942, Allan Anderson, while employed as a mechanic at San Francisco, California, by A. T. Morris & Sons, Inc., sustained an injury arising out of and occurring in the course of his employment, when a foreign body lodged in his left eye. On February 27, 1942, said employer filed with the respondent Industrial Accident Commission, an application directed against said Allan Anderson, employee, and State Compensation Insurance Fund, requesting reimbursement of certain expenditures for medical treatment given to said employee, Allan Anderson, on account of said injury. A hearing was held before the respondent commission and there was placed in issue the validity of the insurance coverage and the right of the insured respondent, A. T. Morris & Sons, Inc., to enforce the same. On June 29, 1942, the Industrial Accident Commission issued its findings and award in favor of said application and against the petitioner. Later the latter applied for a rehearing. On July 6, 1942, the Industrial Accident Commission issued its order denying a rehearing. Thereafter this application was made.

As stated above, the petitioner claims that the policy issued to the insured was not a valid contract. We think it is mistaken. In paragraph 2 of the award made by the respondent commission the latter made findings as follows:

"2. On or before January 1, 1942, the defendant State Compensation Insurance Fund issued to applicant, A. T. Morris & Sons, Inc., a policy of workmen's compensation insurance effective from January 1, 1942, to January 1, 1943, under an agreement or arrangement between State Compensation Insurance Fund on the one hand and A. T. Morris & Sons, Inc., and other insureds on the other hand, by the terms of which the insurer was and is to receive full standard premium rates from each of the insureds and is to combine the premiums and losses of the several insureds and, after conclusion of the policy year, is to declare a dividend for distribution among the several insureds, provided all premiums are paid and a surplus is available, and provided that the

combined loss experience justifies, and the financial position of the insurer is deemed by the Industrial Accident Commission to warrant such a payment. The dividend, if any, which the assured will receive may reasonably be expected to be greater, but may in some cases be less, than the dividend which such assured would receive if its workmen's compensation insurance were treated individually rather than in combination with the premiums and loss experience of the several other insureds; and the dividend received by such assured for the policy year just concluded was in fact less than such assured would have received if insured under an individual policy. Each of the insureds is required to be, and is, a member of a bona fide association of building contractors, to wit, the Associated Home Builders of San Francisco, a corporation organized to promote many common interests of its members in the building industry, which interests were later enlarged to include the purchase of workmen's compensation insurance upon a 'group' plan. The agreement in its operation tends to reduce the costs of payroll auditing and claims adjustment, to reduce the incidence of non-insurance of employers as to coverage of their employees for workmen's compensation liability and to promote accident prevention. The form of this agreement and the procedures followed thereunder do not affect the validity of the insurance issued by the State Compensation Insurance Fund to the applicant herein, and are in all respects lawful. No question of equitable liability or of estoppel is presented, and this decision does not rest upon any claim thereof.'' The facts therein recited are a concise statement of the testimony given by R. N. Shoreen, assistant superintendent of underwriting for the State Compensation Insurance Fund, Milton W. Morris, executive secretary of the Associated Home Builders of San Francisco, A. T. Morris, Jr., secretary of A. T. Morris & Sons, Inc., C. L. Barr, superintendent of safety engineering of the State Compensation Insurance Fund, R. C. Kuhn, formerly assistant executive secretary of the Associated Home Builders of San Francisco, and George Bush, cashier and credit manager of the State Compensation Insurance Fund. Said facts are not controverted by the testimony of any witnesses. Other ''group'' policies of workmen's compensation insurance have been written since 1923 with the knowledge and acquiescence of the administrative officers of the several departments of the state interested in such

matters. The annual premiums received from such policies now amount to $1,500,000, and the interests of many thousands of employees are given protection under them.

Except as will hereinafter be noted, it is not even claimed by the petitioner that the said policy or any of its provisions contravene any of the provisions of section 1667 of the Civil Code, or any express prohibition or penal statute.

We do not understand the petitioner to contend that if the issuance of said policy was an act within petitioner's corporate objects, purposes and powers, but the powers have been exercised in an improper manner, that then and in that event the insured may not recover. Of course, he may recover. (*California C. P. Growers* v. *Harkey,* 11 Cal.2d 188, 210 [78 P.2d 1137]; *Dunne* v. *Independent Order of Foresters,* 185 Cal. 211 [196 P. 41, 18 A.L.R. 639].) However, we do understand the petitioner to claim that the said policy was beyond the scope of the powers of the petitioner, express or implied, and that it cannot be ratified by either party because it could not have been authorized by either, and no performance on either side can give the contract any validity or be the foundation of any right of action upon it. (6a Cal. Jur. 1279; *Stevens* v. *Boyes Hot Springs,* 113 Cal.App. 479, 482 [298 P. 508].) So contending petitioner claims the policy was in violation of sections 11730-11742 of the Insurance Code. That contention rests solely in argument. The petitioner does not cite any passage contained in any one of those sections which it claims the policy violated. Assuming, solely for the purpose of this opinion, that some such passage could be cited, it must be conceded at once that such passage is ambiguous. However, that ambiguity must be answered in favor of the policy holder for several different reasons.

(1) The first reason is that the claim of the petitioner is, in effect, a claim that the policy it issued is ambiguous. Assuming such to be the fact, said ambiguity will be ruled in favor of the insured and against the insurer. (32 C. J. 1152; *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421, 424 [213 P. 42, 26 A.L.R. 123].)

(2) Construction of the statutes by the Legislature has been adverse to petitioner. In 1935 the Legislature regulated "group" life policies. (Insurance Code, §§ 10200-10213.) But in doing so it enacted section 10201, which is as follows: "The only forms of group life insurance are those set forth in this chapter." In 1939 the Legislature added section 4.199

to the School Code. That section regulates the issuance of a "group" policy to any number of, or all school districts in any county. In 1941 the Legislature enacted section 11656.5 of the Insurance Code. By its terms it is limited to agricultural employees. When it was before one of the committees of the Senate an amendment was made as follows: "Except as herein provided, a workmen's compensation insurer shall issue a separate policy to each insured employer and shall not combine two or more employers for the purpose of insurance or dividend distribution." That amendment was stricken from the bill on the Senate floor. (Senate Journal, June 11, 1941, p. 2565.) These several enactments indicate no intention on the part of the Legislature that the policy in suit should be prohibited.

██ (3) Furthermore, construction placed on the statutes by the administrative officers whose duty it was to construe said statutes has been adverse. Such contracts as the one before us have been issued from time to time since 1923. From that date down to the present time no question regarding the validity of such contracts has been raised by any of the administrative boards or officers. Such long continued construction by the administrative department will be accorded great respect by the courts. (*Los Angeles County* v. *Superior Court,* 17 Cal.2d 707, 712 [112 P.2d 10].)

██ Petitioner also cites and relies on sections 11650-11662 of the Insurance Code and quotes a rule (Par. 14, rule V of the Compensation Manual). They are not helpful. The said sections deal with "limited policies." The policy before us is not, and is not claimed to be, a "limited policy." That expression applies, "When certain classes or types of loss are specifically excluded." (Webster's New International Dictionary.) The rule, (Par. 14, rule V), is as follows: "Two or more employers *jointly* engaged in operations involving a *common* payroll and who are subject to state compensation, may obtain a compensation policy without additional charge because of the additional interest involved, it being understood that in such case, but not otherwise, there is but one obligation for compensation." (Italics ours.) That rule is pertinent to cases where there is a general employer and a special employer and perhaps to some other cases. But it is clear that it does not even purport to cover "group" insurance. It neither affirms nor denies the right to issue such contracts.

As we understand the petitioner, it claims that policy provisions are regulated by Insurance Code, sections 11650-11662; that section 11659 authorizes the Insurance Commissioner to adopt rules making further limitations; that he has done so by the adoption of said rule, paragraph 14, rule V of the Compensation Manual; and that the issuance of the policy in suit was a violation of said rule. No specific provision is called to our attention showing that the policy in suit violated any provision in any of said sections or in said rule. But, conceding such claims solely for the purpose of argument, it does not follow that the said policy was void. That is so because the statute (§ 11660) states the effect. It provides: "Failure to observe the requirements of sections 11658 and 11659, shall render any such policy, issued under section 11657 and not complying therewith, *unlimited.*" (Italics ours.) But as we have shown above this action presents no question of a limited or unlimited policy.

The petitioner contends: That groups as such may not be covered by a single policy of workmen's compensation insurance, that the Legislature having made specific provision for group insurance in two instances, and not having made any provisions for group workmen's compensation insurance, it may be implied therefrom that it was not the intention to so provide. That is a misconception of the law.

In the absence of statutes on the subject, persons, partnerships, and corporations may write insurance. (32 C. J. 981 and 1004.) The Legislature may regulate the business. In this state it has done so in some particulars. But counsel have not cited, and we have not seen, any statute that purports to prohibit the issuance of such policies as the one in suit.

As above stated, the petitioner also argues that the issuance of such policies will defeat the "Merit rating" statutes. (Insurance Code, §§ 11730-11742.) But the argument is based on a false premise. Under the policy in suit the insurer is bound to charge merit rates in writing its contract. However, after the contract has terminated—after all losses have been met—the policy provides for a reckoning and a refund out of the surplus, if there be any. Such refund is expressly authorized by section 11738 as follows: "Nothing in this article shall affect the right of any insurer to issue compensation participating policies. A refund by reason of a participating provision in a compensation policy shall not

be made to policyholders by any insurer except from surplus accumulated from premiums on workmen's compensation policies issued pursuant to laws of this State governing workmen's compensation insurance."

As stated hereinabove, in the absence of statutes on the subject, persons, partnerships and corporations may write insurance. (32 C. J. 981 and 1004.) ██ The provisions and conditions of a contract or policy of insurance should not be·in contravention of law or public policy. (32 C. J. 1107.) The policy in suit was not in contravention of law or public policy, and therefore such contracts may be written by any insurer. Furthermore, it is statutory that: "The fund may transact workmen's compensation insurance required or authorized by law of this State to the same extent as any other insurer." (Insurance Code, § 11778.)

From what has been said above it clearly appears that the petitioner has no grounds for and has never attempted rescission, that no fraud is involved, and that it has received and retains the premiums paid for the policy in suit. The said policy was not *malum in se* nor *malum prohibitum* and there is no statute purporting to declare the policy void. It follows that the petitioner is entitled to no relief. (*California C. P. Growers* v. *Harkey,* 11 Cal.2d 188, 208-211 [78 P. 1137].)

In its award the defendant commission made a finding that "No question of equitable liability or of estoppel is presented, and this decision does not rest upon any claim thereof." Each party in its brief has made a similar statement. Therefore we have not discussed the subject and we do not express any opinion thereon.

The award under attack is affirmed.

Nourse, P. J., and Spence, J., concurred.