Filed 7/23/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CAMDEN SYSTEMS, LLC, | B324716 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV11537) |
| v. | |
| 409 NORTH CAMDEN, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge. Affirmed.

Law Offices of David M. Wolf and David M. Wolf for Plaintiff and Appellant.

Kaufman Dolowich Voluck, Vincent S. Green and Steve R. Segura for Defendants and Respondents.

———————————————————

Camden Systems, LLC appeals from the judgment entered in favor of defendants 409 North Camden, LLC and its individual members after the trial court granted defendants' summary judgment motion. Camden Systems's complaint sought declarations that certain actions taken by members of 409 North Camden, including distributions to the members, were invalid, and it sought return of the distributed funds. In its motion, 409 North Camden acknowledged that some of the actions taken by its members at the company's February 2021 annual meeting were invalid in light of defective notice of the meeting, but it argued that at its February 2022 annual meeting a majority of the members ratified the prior actions, thereby curing any defect in the 2021 notice. The trial court agreed and granted summary judgment in favor of 409 North Camden.

On appeal, Camden Systems contends that the members' ratification of the actions taken at the February 2021 meeting did not cure the defective notice because members of limited liability companies, unlike corporations, may not ratify prior actions taken on behalf of company. However, the California Revised Uniform Limited Liability Company Act (Corp. Code, § 17701.01 et seq.; the Act),[1] which governs the management and operation of limited liability companies, provides that a limited liability company generally "shall have all the powers of a natural person in carrying out its business activities." (§ 17701.05.) Because a natural person has the power to ratify acts taken on the person's behalf, limited liability companies likewise may, through their members, ratify actions previously taken on behalf of the

[1] Further undesignated statutory references are to the Corporations Code.

2

company. In addition, the court did not err in upholding the resolution adopted by the majority of 409 North Camden's members to indemnify its members and advance defense costs and expenses incurred in the lawsuit filed by Camden Systems. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Formation of 409 North Camden and Camden Systems's Purchase of a Membership Interest*

In 1963 a group of six friends purchased a two-story office building in Beverly Hills. From 1963 until 2016 the purchasers (and some of their heirs) owned the building as tenants in common without any formal partnership agreement. In 2016 the owners, still composed of the original purchasers and their heirs, formed 409 North Camden as a manager-managed limited liability company and transferred ownership of the office building to the company. At the time of its formation, 409 North Camden had 13 members. Jeffrey Young, the son of one of the original owners, was elected as the manager of the company.[2]

In 2020 Camden Systems became a member of 409 North Camden by purchasing the membership interests of three existing members. As of October 2020, there were 10 members of the company, all of whom—except for Camden Systems—were the building's original purchasers or their family members. Camden Systems owned a 22.5 percent interest in the company, comprising the largest single membership interest.

---

[2] Young is not a member of the LLC in his individual capacity but is a trustee of a trust that is a member.

3

B.      *The Disputed Actions*

        1.      *Distributions of "Available Cash"*

The operating agreement of 409 North Camden provides that "[t]he Company shall make quarterly distributions of Available Cash at such times and in such amounts as determined by the Manager, subject to the approval of the Members."[3]  Since September 2016 the company distributed approximately $773,000 in Available Cash to its members.  Each distribution was authorized by a majority of the members.  The members did not authorize any distributions after Camden Systems became a member in July 2020.

        2.      *Actions taken at the February 2021 annual meeting*

On January 11, 2021 Young sent the members of 409 North Camden a notice that the company's annual meeting would take place on February 20, 2021.  The notice included copies of three documents Young indicated would be discussed at the meeting regarding potential building upgrades or modifications.  The notice stated an agenda and annual report would be distributed "a few days" prior to the meeting.  No other topics of discussion or potential action items were mentioned in the notice.

On February 11, 2021 Young sent the company's members a meeting agenda for the upcoming meeting, which listed four action items that members would vote on at the meeting:  (1) re-election of Young as manager;[4] (2) withholding cash distributions

---

[3]      "Available Cash" is defined as "cash paid to or in the possession of the Company" after deducting amounts necessary to pay expenses and other obligations to third parties.

[4]      The operating agreement requires members to "vote on the position of Manager every two years."

4

for the first quarter of 2021; (3) authorization of payment of expenses in excess of $10,000; and (4) approval of a "[m]anagement assistance fee" of $1,500 per month to member Kenneth Young.

On February 15, 2021 an attorney for Camden Systems sent a letter to Jeffrey Young complaining that Young had failed to produce certain corporate records Camden Systems had previously requested. Camden Systems's attorney asserted the records were necessary for his client to prepare for the upcoming member meeting, and therefore, it intended to object to any business taking place at the February 20 meeting without having first received the records. Camden Systems also provided a notice to Young that it intended to object to any business being conducted by the members at the February 20 meeting because the January meeting notice did not state the general nature of the business to be transacted, as required by the Corporations Code. Further, although the February 11 notice specified the business to be transacted at the meeting, the notice was untimely because it was sent less than 10 days before the meeting, in violation of the Code.

The annual meeting was held as scheduled on February 20, 2021. Joseph Shabani, the manager of Camden Systems, attended the meeting and reiterated Camden Systems's objections as stated in its attorney's letter and notice. The four action items listed in the meeting agenda were voted on and approved by a majority of the members who were present. Shabani, on behalf of Camden Systems, abstained from each vote.

5

C.    *Initiation of This Lawsuit and 409 North Camden's Response*

On March 25, 2021 Camden Systems, in its individual capacity and derivatively on behalf of 409 North Camden, filed this action against 409 North Camden (as a nominal defendant) and its members (member defendants),[5] alleging causes of action for breach of fiduciary duty, breach of contract, and declaratory relief.  The allegations in the complaint were based, in part, on the alleged impropriety of the authorizations for cash distributions made between 2016 and July 2020 and the actions taken at the February 2021 meeting.

On May 3, 2021, prior to responding to the complaint, the member defendants adopted a written resolution regarding the

---

[5]    The members of 409 North Camden as of October 2020 were named as defendants in the action.  Since that time, some members have sold portions of their interests to other family members.  Subsequent versions of the complaint have not named the new members even though the amended complaints alleged wrongful acts taken by all members after the new members joined.

The member defendants are: Kathryn A. Young, Kenneth J. Young, Young Family 2011 Trust U/D/T Dated March 18, 2011 (Jeffrey S. Young and Jana Winters Young, trustees); Shiffman Trust Dated May 14, 1986 (Irvin Shiffman, trustee); Brad Shields Trust Dated 4/25/14 (Bradley Alan Shields, trustee); The Hurl Family Trust Dated July 19, 1994 (Laurie S. Hurl, trustee); Evelyn Mazza Trust Dated December 30, 2014 (Stephen H. McClintock, trustee); The Marietta N. Mazza 2008 Living Trust (Melanie Jacobs, trustee); Marital Trust Under the Anthony J. and Evelyn Mazza Family Trust Dated November 6, 1996 (Debbie Hughes, Cynthia Rutherford, Melanie Jacobs, Patti Monsoor, and Stephanie Bartha, co-trustees).

pending litigation.  The resolution stated in its recitals that after Camden Systems became a member of 409 North Camden, Shabani and his attorney told Young that Shabani "expect[ed] to buy" the remaining interest in 409 North Camden and "'things will not go well for you if you refuse to sell the property to him.'"  Shabani had also contacted individual members and threatened to sue them if they did not sell their interests in the company to him.  According to the resolution, the member defendants were "uniform in their decision that they do not want to sell their interest in the Company or the Property at all and certainly not to Shabani under these circumstances."  The member defendants resolved that 409 North Camden would not make upcoming cash distributions and would instead reserve all excess funds for defense of the lawsuit.  In addition, the member defendants agreed 409 North Camden "shall indemnify and hold the Manager and the Members harmless" against the lawsuit and shall "advance defense costs and expenses accordingly."  The resolution was dated May 3, 2021 and signed by all members of the company except Camden Systems.

Over the next year, the trial court sustained multiple demurrers to the complaint and amended complaints with leave to amend, and on February 15, 2022 Camden Systems filed its operative third amended complaint.

On February 8, 2022, after the demurrer to the second amended complaint was sustained but before Camden Systems filed the third amended complaint, Young sent an agenda for the upcoming annual meeting to the members of 409 North Camden. The agenda explained the status of the lawsuit and that there were remaining allegations "involving the adequacy and timeliness of our prior meeting agendas," which "were not sent

out 10 days before our meetings.  Camden Systems is seeking to have any action items approved during those years be deemed null and void by the court.  This action item is to RATIFY the members' prior actions, one by one, from 2020 and 2021. . . . Such ratification will be retroactive to the date of the February 2020 and February 2021 meetings."  The agenda then listed the specific items to be ratified, including the cash distributions, the four actions taken at the February 2021 meeting, and the indemnification resolution.

The annual meeting was held on February 19, 2022.  The members approved by majority vote the ratification of the prior cash distributions, the actions taken at the February 2021 meeting, and the indemnification resolution.  Shabani, on behalf of Camden Systems, voted no or abstained from each vote, except the ratification of the 2021 vote to pay expenses in excess of $10,000, for which Shabani voted yes.  The meeting minutes do not state that Shabani or Camden Systems objected to the ratification process prior to or during the meeting.

D.    *The Third Amended Complaint*

The third amended complaint alleged three causes of action against the member defendants: a request for declaratory relief finding the actions taken at the February 2021 meeting were without force and legal effect because the meeting notice was untimely and/or did not sufficiently state the nature of the business to be conducted; a claim for money had and received based on the allegedly improper cash distributions; and a request for declaratory relief finding the May 2021 indemnification

8

resolution was invalid because the company was without legal authority to indemnify the members.[6]

E.      *The Member Defendants' Motion for Summary Judgment*

On May 10, 2022 the member defendants moved for summary judgment, or in the alternative, summary adjudication. The member defendants argued that, even if the notice for the February 2021 meeting was defective, it was undisputed that the notice for the February 2022 meeting, at which the members ratified their earlier actions, was timely and sufficiently detailed. The ratification thus cured any defects in the prior actions. Further, regarding the cause of action for money had and received, Camden Systems did not have standing to challenge actions taken before it became a member of the company in 2020, and, even if it had standing, the cash distributions were ratified during the procedurally proper 2022 meeting.  Finally, the

---

[6]      The third amended complaint also included a cause of action against the member defendants for declaratory relief stating that pursuant to the operating agreement no cash distributions or payment of expenses in excess of $10,000 could be made without unanimous approval of all members.  The trial court granted summary adjudication on this cause of action, and Camden Systems has not appealed that ruling.

In addition, the third amended complaint alleged three causes of action against Young as manager: two for breach of fiduciary duty and one for breach of contract.  The trial court sustained the member defendants' demurrer to one breach of fiduciary duty claim, and we affirmed on appeal.  (See *Camden Systems, LLC v. Young* (Jan. 10, 2024, B321117) [nonpub. opn.].) Camden Systems voluntarily dismissed the two remaining claims against Young, and he is no longer a party to the lawsuit.

9

indemnification resolution was authorized under the operating agreement.

In opposition, Camden Systems argued the purported ratification in 2022 had no legal effect because limited liability companies do not have the power to ratify earlier actions. Camden Systems further argued it had standing to pursue the money had and received cause of action even though it was not a member of the company when the distributions were authorized because at least one distribution payment was made after Camden Systems became a member of the company. Finally, the indemnification resolution was ineffective because any action not within the ordinary course of the company's business required unanimous consent of the members.

On July 26, 2022, following a hearing, the trial court granted the motion for summary judgment, and on September 13, 2022 the court entered judgment in favor of the member defendants. Camden Systems timely appealed.

## DISCUSSION

A. *Governing Law and Standard of Review*

The Act provides that the activities and conduct of a limited liability company are generally governed by its operating agreement. (§ 17701.10, subd. (a).) With certain enumerated exceptions, the operating agreement may establish rules that differ from the statutory default rules. (*Id.*, subd. (d).) To the extent an operating agreement "does not otherwise provide for a matter," the matter is governed by the Act. (*Id.*, subd. (b).)

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c);

10

*Regents of University of California v. Superior Court* (2018)
4 Cal.5th 607, 618; *Doe v. Roman Catholic Archbishop of Los
Angeles* (2021) 70 Cal.App.5th 657, 668.) "'"'"We review the trial
court's decision de novo, considering all the evidence set forth in
the moving and opposing papers except that to which objections
were made and sustained.'" [Citation.] We liberally construe the
evidence in support of the party opposing summary judgment and
resolve doubts concerning the evidence in favor of that party."'"'"
(*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347;
accord, *Doe*, at p. 669; *Sabetian v. Exxon Mobil Corporation*
(2020) 57 Cal.App.5th 1054, 1068.)

A defendant moving for summary judgment has the initial
burden of presenting evidence that a cause of action lacks merit
because the plaintiff cannot establish an element of the cause of
action or there is a complete defense. (Code Civ. Proc., § 437c,
subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th
826, 850; *Sabetian v. Exxon Mobil Corporation, supra*,
57 Cal.App.5th at p. 1068.) If the defendant satisfies this initial
burden, the burden shifts to the plaintiff to present evidence
demonstrating there is a triable issue of material fact. (Code Civ.
Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849; *Sabetian*, at
p. 1069.)

"'In performing an independent review of the granting of
summary judgment, we conduct the same procedure employed by
the trial court. We examine (1) the pleadings to determine the
elements of the claim, (2) the motion to determine if it establishes
facts justifying judgment in the moving party's favor, and (3) the
opposition—assuming movant has met its initial burden—to
"decide whether the opposing party has demonstrated the
existence of a triable, material fact issue."' [Citation.] 'We need

11

not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale.' [Citation.] Thus, a reviewing court 'will affirm a summary judgment if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons.'" (*Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 160-161; accord, *Murchison v. County of Tehama* (2021) 69 Cal.App.5th 867, 881-882.)

B.  *The Trial Court Properly Granted Summary Judgment with Respect to the Cause of Action for Declaratory Relief Relating to the February 2021 Meeting*

1.  *Standard for declaratory relief*

Declaratory relief is available to "[a]ny person interested under a written instrument . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . in cases of actual controversy relating to the legal rights and duties of the respective parties . . . ." (Code Civ. Proc., § 1060.) "Declaratory relief pursuant to this section has frequently been used as a means of settling controversies between parties to a contract regarding the nature of their contractual rights and obligations." (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647.) Likewise, "'"[t]he correct interpretation of a statute is a particularly suitable subject for a judicial declaration. [Citation.] Resort to declaratory relief therefore is appropriate to attain judicial clarification of the parties' rights and obligations under the applicable law."'" (*City of Lancaster v. Netflix, Inc.* (2024) 99 Cal.App.5th 1093, 1114.)

12

A defendant moving for summary judgment on a declaratory relief claim has the burden to establish that "the plaintiff is not entitled to a declaration in its favor.  It may do this by establishing (1) the sought-after declaration is legally incorrect; (2) undisputed facts do not support the premise for the sought-after declaration; or (3) the issue is otherwise not one that is appropriate for declaratory relief."  (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1402.)

> 2. *The notices for the February 2021 meeting were defective*

Section 17704.07, subdivision (h)(1), requires that, "[w]henever members are required or permitted to take any action at a meeting, a written notice of the meeting shall be given not less than 10 days or more than 60 days before the date of the meeting to each member entitled to vote at the meeting."  The notice must state "the general nature of the business to be transacted.  No other business may be transacted at the meeting."  (*Ibid.*)  In addition, "[a]ny action approved at a meeting, other than by unanimous approval of those entitled to vote, shall be valid only if the general nature of the proposal so approved was stated in the notice of meeting or in any written waiver of notice."  (*Id.*, subd. (*l*).)[7]

The member defendants do not dispute that the initial notice for the February 20, 2021 meeting, sent in January 2021, did not contain the general nature of the business to be discussed or the proposals to be approved—specifically, the reelection of

---

[7]  Because the operating agreement is silent regarding notice procedures, the statutory requirements govern.  (See § 17701.10, subd. (b).)

13

Young as manager, withholding of first and second quarter distributions, payment of certain expenses, and payment of a management assistance fee to Kenneth Young. It is also undisputed the second notice of the meeting, sent on February 11, 2021, was sent less than 10 days prior to the meeting. Accordingly, the actions approved at the meeting were invalid at the time.

      3.     *The 2022 ratifications of the 2021 actions were effective*

Despite the invalidity of the February 2021 actions, Camden Systems was not entitled to a declaration the actions taken at the meeting were invalid because the actions were subsequently ratified. Camden Systems does not dispute that the notice for the February 2022 meeting (at which the ratification votes were taken) was sent more than 10 days in advance of the meeting and contained sufficient information regarding the actions to be addressed. Instead, Camden Systems contends the ratification was ineffective because the members did not have legal authority to ratify their earlier actions.

The concept of ratification is derived from the law of agency that has repeatedly been applied in the context of corporate governance. In the context of acts by agents, "[r]atification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73; accord, *Estate of Stephens* (2002) 28 Cal.4th 665, 673.) "[T]he effect of a ratification is that the authority which is given to the purported agent relates back to the time when he performed the act." (*Rakestraw*, at p. 73;

accord, *Meyers v. El Tejon Oil & Refining Co.* (1946) 29 Cal.2d 184, 187 ["ratification has a retroactive effect"].)  "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified . . . ."  (Civ. Code, § 2310.)[8]

Applying this law, courts have found an action that was initially within the authority of a corporation's board but was not properly authorized may be ratified "through a resolution of its board of directors when duly assembled."  (*John Paul Lumber Co. v. Agnew* (1954) 125 Cal.App.2d 613, 622; accord, *Meyers v. El Tejon Oil & Refining Co., supra*, 29 Cal.2d at p. 186 ["[a] resolution of the board of directors declaring a dividend, even though it is unlawful in its inception for lack of a duly held meeting, can be ratified by the board of directors"]; *Porter v. Lassen County Land & Cattle Co.* (1899) 127 Cal. 261, 270-271 [execution of a note secured by real property that was originally approved at a procedurally defective board meeting was ratified by subsequent resolutions adopted at procedurally proper board meetings]; *Doerr v. Fandango Lumber Co.* (1916) 31 Cal.App. 318, 323-324 [resolution acknowledging existence of loan at full board meeting ratified loan allegedly negotiated by corporation's president without board's authorization]; see also *Horner v. Marine Engineers' etc. Assn.* (1959) 175 Cal.App.2d 837, 843

---

[8]     Ratification is generally not permitted when it will prejudice the rights of a third party.  (See Civ. Code, § 2313 ["No unauthorized act can be made valid, retroactively, to the prejudice of third persons, without their consent."].)  Camden Systems does not contend on appeal that ratification was improper because Camden Systems suffered prejudice from the company's ratification of the February 2021 actions.

15

[labor union members' ratification of corporate officers' salaries was a complete defense to claim that salaries were in violation of former bylaws].)

Camden Systems "concedes shareholders and boards of directors have rights of ratification," but it contends such rights do not extend to limited liability companies. Camden Systems has not cited any authority for the proposition that general principles of ratification cannot be applied to limited liability companies in the same way those principles are applied to corporations, labor unions, and other organizations. Instead, Camden Systems argues "the Corporations Code expressly grants [ratification] powers to shareholders and boards, but grants no comparable power to members of a limited liability company."[9] (Italics omitted.) However, a limited liability company generally "shall have all the powers of a natural person in carrying out its business activities." (§ 17701.05.) It follows that a limited liability company would have the same authority as an individual to ratify a previous action.

Camden Systems relies on the Legislature's recent enactment of section 119 regarding ratification of prior actions of corporations.[10] However, section 119 did not *grant* the right of

---

[9]  Camden Systems also argues that courts in Delaware and other jurisdictions have limited ratification with respect to corporations to require either a unanimous vote or a vote by a disinterested majority. Most of these cases involve allegations of breach of fiduciary duty or fraud (not at issue here), and further, these cases are not relevant to whether under California law ratification by members of limited liability companies is permissible.

[10]  Effective January 1, 2023, section 119, subdivision (a)(1), provides: "Otherwise lawful corporate actions not in compliance,

16

ratification to corporations; it merely established a procedure by which such ratifications could occur. This is evident from the language of the statute: "This section does not limit the authority of the board, the shareholders, or the corporation to effect any other lawful means of ratification or validation of a corporate action or correction of a record." (§ 119, subd. (a)(3).) In other words, there was a preexisting "lawful means of ratification" for corporations prior to the Legislature addressing the issue in section 119, just as there is a lawful means of ratification for limited liability companies absent any statutory provision regarding the procedure.

In the absence of any authority prohibiting a limited liability company from ratifying an earlier action, there is no basis for a declaration that the actions taken as a result of the February 2021 meeting, which were later ratified by a majority of the members with proper notice, were invalid. In fact, Camden Systems has effectively received the remedy it initially sought—a procedurally proper vote on the actions taken.

---

or purportedly not in compliance, with this division or the articles, bylaws, or a plan or agreement to which the corporation is a party in effect at the time of the corporate action, may be ratified, or validated by the superior court, in accordance with the provisions of this section." Subdivision (b)(1) sets forth requirements for ratification where the procedures are not otherwise specified in a corporation's articles of incorporation or bylaws.

C. *The Trial Court Properly Granted Summary Judgment with Respect to the Cause of Action for Money Had and Received*

A common count for money had and received "is not a specific cause of action . . . ; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness . . . ." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394; accord, *Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1559-1560.) "Although such an action is one at law, it is governed by principles of equity . . . ." (*Mains v. City Title Ins. Co.* (1949) 34 Cal.2d 580, 586.)

"A cause of action for money had and received is stated if it is alleged [that] the defendant 'is indebted to the plaintiff in a certain sum "for money had and received by the defendant for the use of the plaintiff."'" (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460.) The claim is viable "'wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter.'" (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 937.) "The plaintiff must prove that the defendant received money 'intended to be used for the benefit of [the plaintiff],' that the money was not used for the plaintiff's benefit, and that the defendant has not given the money to the plaintiff." (*Avidor v. Sutter's Place, Inc.* (2013) 212 Cal.App.4th 1439, 1454.)

Camden Systems argues the member meetings between February 2017 and June 2020 were not properly noticed, and therefore, the votes taken at those meetings approving cash distributions to members were invalid, resulting in the members' receipt of funds that rightfully belonged to the company. This

18

argument fails because Camden Systems does not have standing to challenge actions taken by the company prior to Camden Systems's membership, and further, as discussed, the 2020 votes were ratified in February 2022.

A member of a limited liability company may bring a derivative lawsuit on the company's behalf only if "the plaintiff was a member, of record or beneficially, at the time of the transaction or any part of the transaction of which the plaintiff complains . . . ." (§ 17709.02, subd. (a)(1).)[11]  It is undisputed that Camden Systems was not a member of the company until July 2020.  Camden Systems argues, however, that "part of the transaction" complained of took place after it became a member because $50,000 was distributed to members in late 2020.

---

[11]  Section 17709.02, subdivision (a)(1), provides that even if a member was not a member of the company at the time of the complained of transaction, the member "may nevertheless be allowed in the discretion of the court to maintain the action on a preliminary showing to and determination by the court, by motion and after a hearing at which the court shall consider any evidence, by affidavit or testimony, as it deems material, of all of the following:  [¶]  (A)  There is a strong prima facie case in favor of the claim asserted on behalf of the limited liability company. [¶]  (B)  No other similar action has been or is likely to be instituted.  [¶]  (C)  The plaintiff acquired the interest before there was disclosure to the public or to the plaintiff of the wrongdoing of which plaintiff complains.  [¶]  (D) Unless the action can be maintained, the defendant may retain a gain derived from defendant's willful breach of a fiduciary duty.  [¶] (E)  The requested relief will not result in unjust enrichment of the limited liability company or any member of the limited liability company."  Camden Systems did not request a hearing in the trial court under this section.

19

However, even if Camden Systems had standing to challenge the decision to make the $50,000 distribution, that distribution was explicitly ratified during the February 2022 meeting, and, as discussed, the ratification was procedurally proper and legally effective. Camden Systems has not identified any other portion of the 2017 to 2019 distributions that was made after it became a member of the company.[12] Accordingly, it had no standing to bring a derivative claim challenging those distributions.

D.     *The Trial Court Properly Granted Summary Judgment with Respect to the Cause of Action for Declaratory Relief Based on the Resolution for Indemnification*

Camden Systems seeks a declaration that the company was not authorized to indemnify the member defendants or pay their expenses in this litigation and the resolution purporting to approve such action was invalid. The trial court correctly granted summary judgment as to this cause of action as well.

As discussed, a limited liability company has the same authority as an individual in carrying out its business activities, "including, without limitation, the power to: . . . [l]end money to

---

[12]     Camden Systems makes a cursory argument that it has standing because the action complained of was that the company "continued . . . to give short shrift to and ignore corporate formalities" after 2019; thus, because this continued after Camden Systems became a member in 2020, part of the wrong occurred while it was a member. This argument is unavailing. The allegedly improper transactions supporting the money had and received cause of action were not the corporate informalities, but the distribution of funds. Unless a distribution took place while Camden Systems was a member, Camden Systems has no standing to challenge it.

20

and otherwise assist its members and employees [and] ¶ . . . ¶ [i]ndemnify or hold harmless any person." (§ 17701.05, subds. (g) & (l).) Nothing in the operating agreement limits the company's powers in this regard.

Section 7.2 (a)(i) of the operating agreement sets forth certain limitations on the manager's ability to act without approval from members, stating: "The Manager shall have all the rights and powers permitted under the applicable provisions of the [the Act]. . . . [T]he Manager shall, subject to the approval and consent of not less than 65% of the membership interests . . . have the absolute power to sell, exchange, lease, convey, venture, mortgage, pledge, hypothecate or otherwise deal in or with any and all of the Assets; to cause the Company to issue any guarantees; to borrow funds to finance the conduct of Company activities . . . ; and to invest and reinvest any or all of the Assets in such other property, whether real or personal, incident to or necessary for the operations of the Company." Section 7.2 (a)(ii) continues, "The Manager shall have the right, authority and responsibility to maintain, repair and renovate the Property and any anticipated expenditures exceeding $10,000 shall be approved by the Members."

Section 7.4 of the operating agreement further provides, "As set forth in Section 7.2, without the written consent or ratification of a majority of the Members, the Manager shall have no authority to expend or use Company money or property other than on the account and for the benefit of the Company or to pledge any of the Company's credit or property for other than Company purposes."

Read together, these provisions unambiguously provide that: (1) the manager has authority to sell assets, borrow money,

21

issue guarantees, make investments, and pay expenses, although at least some of those actions require member approval; and (2) the manager cannot use company money for a non-company purpose unless he or she has the written consent or ratification of a majority of members.  Accordingly, because the resolution to indemnify and pay expenses of the members in this lawsuit (a purportedly non-company purpose) was approved by a majority of members, it was a valid and binding resolution.

Camden Systems contends section 7.4 of the operating agreement should be interpreted to the contrary to mean the manager may *never* use company funds for non-company purposes, arguing "the sole and only things on which the Manager is authorized to expend or use Company money, property or credit is for Company purposes, but he may only do so with the consent or ratification of a majority of the Members *when Section 7.2 requires he obtain their consent or ratification*." The plain language of section 7.4 does not support this interpretation.

Camden Systems's remaining arguments likewise fail. First, Camden Systems argues that even if the company was permitted to use company funds for non-company purposes, the approval must be unanimous pursuant to section 17704.07, subdivision (c)(4), which provides "the consent of all members of the limited liability company is required to do . . . ¶ . . . ¶ any other act outside the ordinary course of the limited liability company's activities."  This provision, however, is superseded by section 7.4 of the operating agreement, which, as discussed, requires only majority approval for actions taken not for company purposes.  (See § 17701.10, subd. (d) [with some limitations not

22

applicable here, an operating agreement may deviate from statutory default provisions].)

Second, Camden Systems relies on the language in *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108 that "[m]ajority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority." However, with respect to a manager-managed limited liability company, section 17704.09, subdivision (f), makes clear that other than an obligation of good faith and fair dealing, "a member does not have any fiduciary duty to the limited liability company or to any other member solely by reason of being a member." Accordingly, the rule articulated in *Jones* does not apply here.

## DISPOSITION

The judgment is affirmed. Defendants are to recover their costs on appeal.


FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.